### Dan Marchan v. The State.

No. 2518. Decided June 10, 1903.

**1.—Practice—Withdrawal of Counsel from Case.**

Appellant moved to withdraw his announcement of ready for trial because his leading counsel had withdrawn from the case, which was refused by the court because his remaining counsel had assisted at a former trial of the case and was the one who had announced ready for trial. Held, no error.

**2.—Murder—Threats.**

A threat made by defendant some fifteen or twenty minutes before the shooting, "I'll kill him in ten minutes," was admissible in evidence, although

deceased's name was not mentioned, where it was apparent that the threat alluded to deceased and could not relate to anyone else.

**3.—Attempt to Suborn Witness.**

On a trial for murder it was not error to refuse to permit the State to prove that the mother of deceased had attempted to get a witness for defendant to testify falsify, where it was not shown that the witness was influenced by anything said to him.

Appeal from the District Court of Aransas. Tried below before Hon. E. A. Stevens.

Appeal from a conviction of murder in the first degree; penalty, imprisonment for life in the penitentiary.

Appellant was charged by the indictment with the murder of Francisco Rodrigues, on the 30th day of January, 1903, by shooting him with a gun.

Deceased (who was called "Pancho") and defendant had become offended at each other, but for what cause is not shown; and they had each made threats to kill the other. They had both been drinking the evening before the killing. Defendant was at a restaurant to get his supper. When deceased came in, defendant asked him to have supper with him. Deceased said, "I have had some supper, but I will take some with you, brother," and sat down at the table opposite to defendant. Defendant said, "You said you would cut me up before daylight." Deceased replied, "I did say so." Whereupon defendant, with a most obscene remark drew his pistol, and as deceased attempted to grab him he fired two shots, killing him instantly. No weapon was found on the body of deceased, though several witnesses testified that he frequently went armed. Deceased's character as a peaceable man was proven to be good.

No brief on file for appellant.

*Howard Martin,* Assistant Attorney-General, for the State.

BROOKS, JUDGE.—Appellant was convicted of murder in the first degree, and his punishment assessed at confinement in the penitentiary for life.

Bill number 1 complains of the court refusing to permit appellant to withdraw the announcement, of ready and postpone the case because Jack Elgin, Esq., who was alleged to be the leading counsel, had withdrawn from appellant's case. The bill shows that H. R. Sutherland, Jr., Esq., an attorney, had announced ready and started the trial of the cause, prior to the time that said Elgin withdrew theerfrom.

The explanation of the trial court to the bill shows that said Elgin withdrew from the case. On the trial appellant was represented by said Sutherland, who had assisted as counsel in the previous trial of the case. Certainly there was no error in the ruling of the court under the circumstances.

Bill number 2 complains of the following: The State introduced James Witt, and he testified that about ten minutes before the killing, he met defendant coming out of a saloon, and as defendant came out of the saloon he (defendant) made the remark: "I'll kill him in ten minutes." Appellant objected to this testimony, because the language contained no threat toward deceased; because defendant may have been addressing some one else; because defendant may have been joking. Attached to the bill is the following qualification: The witness testified that defendant, some fifteen or twenty minutes before he shot and killed deceased, in an angry tone said in Spanish: "I'll kill him in less than ten minutes;" and that as defendant made this remark he started up the street and at the time was a half block from the scene of the homicide; that this testimony was admitted for the reason that another witness, Martinez, had testified defendant had told him the day before, in Corpus Christi, that he (defendant) was going to Rockport the next day for the purpose of settling with the son of a bitch Pancho (the deceased). We do not think the court erred in admitting this testimony. "Although the name of the deceased be not mentioned, yet if it can be reasonably gathered that deceased was meant or alluded to, the evidence of such threat will be admissible." Taylor v. State, 44 Texas Crim. Rep., 547, and the authorities there cited. The juxtaposition of defendant to deceased, and to the act of the homicide at the time the declaration was made, shows conclusively that said declaration related to deceased, and could not and did not relate to anyone else.

Bill number 3 complains that while defendant's witness J. S. Munday was on the stand, appellant propounded the following question: "If the mother of deceased had had a conversation with said witness Munday." The State objected to said testimony; and the defendant's attorney said he wished to prove that the mother of deceased had attempted to get the witness Munday to testify falsely. The court states: "The objection was sustained for the reason that the mother of deceased was not a witness, nor did she testify in the case; nor was it shown or attempted to be shown by defendant that she had influenced or endeavored to influence in any way any witness who had then or who did thereafter testify in the case, hence it was immaterial what she said to the witness Munday, in the absence of any showing that he (Munday) was influenced by anything said to him. Said Munday was a witness for defendant and testified in his behalf." We see no error in the ruling of the court in this matter.

The evidence amply supports the verdict of the jury. Appellant sought deceased, after breathing threats, with the avowed purpose of taking his life; and, without any provocation, shot and killed deceased.

No error appears in the record. The judgment is affirmed.

*Affirmed.*