## M. G. WILSON v. THE STATE.

### No. 2512.   Decided June 11, 1913.

**1.—Assault to Murder—Words and Phrases—Charge of Court.**

Where, upon trial of assault to murder, the court submitted the issue of self-defense upon an attempt by State's witnesses to rob the defendant, using the words, "if by force and violence," the property of defendant was taken from him, etc., that he had the right of self-defense, the contention that the court should have used the words, "by assault and putting in fear of their lives or bodily injury," was hypercritical and not well taken, and there was no error.

**2.—Same—Evidence—Corroboration.**

Where, upon trial of assault to murder growing out of the playing of a game of cards, the main State's witness had described the furniture in the room where the cards were played, there was no error in permitting the State to show by the officers that they examined said room, describing the furniture therein, in corroboration of the State's witness.

**3.—Same—Evidence—Res Gestae.**

Upon trial of assault to murder, there was no error in admitting in evidence the statement of the main State's witness immediately after he had been fired upon, that defendant and others had robbed him and shot him as he came downstairs; especially, as the same was withdrawn thereafter by the court.

**4.—Same—Evidence—Contradicting Witness.**

Where a State's witness had not been placed on the stand and his reputation as a law-abiding citizen was not an issue in the case, there was no error in excluding testimony as to certain instances of dangerous conduct in the life of said witness, no one having knowledge of such facts. Following Willis v. State, 49 Texas Crim. Rep., 139, and other cases.

**5.—Same—Remarks by Judge—Charge of Court.**

Where the remarks of the trial judge could not have been injurious to defendant, and the court's charge on justifiable homicide was such as would cause such remark to be really beneficial instead of hurtful to the defendant, there was no error.

**6.—Same—Sufficiency of the Evidence.**

Where, upon trial of assault with intent to murder, the evidence sustained a conviction of such offense, under a proper charge of the court, there was no error.

Appeal from the District Court of Tarrant.   Tried below before the Hon. R. H. Buck.

Appeal from a conviction of assault with intent to murder; penalty, two years imprisonment in the penitentiary.

The opinion states the case.

*Baskin, Dodge & Eastus,* for appellant.—On question of res gestae statement of prosecuting witness: Barth v. State, 39 Texas Crim. Rep., 381; Henard v. State, 46 id., 90; McCandless v. State, 42 id., 58.

On question of remarks by court: Simmons v. State, 55 Texas Crim. Rep., 441; Chancey v. State, 50 Texas Crim. Rep., 85.

*C. E. Lane,* Assistant Attorney-General, for the State.

HARPER, JUDGE.—Appellant was prosecuted and convicted of assault to murder, and his punishment assessed at two years confinement in the penitentiary.

The testimony shows that Lincoln Pepper and his two cousins had gone from Alabama to Oklahoma, and from a point in that State bought a ticket for Dallas. En route to Dallas they stopped over in Fort Worth and went into the bar of the Rosen hotel. While in the saloon they and appellant, Lee Black, and William Robinson went into a back room and engaged in gambling. A short time before 12 o'clock they went to room No. 30 in the Rosen hotel and gambled all night. There is virtually no conflict in the testimony up to this point, but from here on there is a sharp conflict. The State's witnesses say that about 7 o'clock in the morning one of the Pepper boys won a "pot" and said he was going to quit, when Robinson slipped his hand back in his pocket and took the money off the table and put it in his pocket, and had the other Pepper surrender what money he had in sight and ordered them out of the room. When they left they say they were followed by Robinson and appellant, and after going down the steps, just as they were going out the door, someone fired and Lincoln Pepper was shot in the back. The Peppers returned the fire. The proof beyond doubt shows that appellant was the person who shot Lincoln Pepper.

Appellant's contention is that he, Black and Robinson had won some money from the three Peppers; that Robinson started to leave when the Peppers drew their pistols and forced them to surrender not only the money they had won, but some of their own money. That the Peppers then lined appellant and Robinson up, and marched them out of the room, and down two flights of stairs, when they halted at the landing and told them to remain there until they left; that appellant made the remark he was going to have the Peppers arrested for taking his money. and started down the steps when the Peppers opened fire on him, when he pulled his pistol and shot twice.

Thus it is seen the Peppers claimed they had been robbed by Robinson, Black and appellant, and when they said they were going to have them arrested, they were fired on, Lincoln Pepper being wounded. On the other hand, appellant, Robinson and Black claim they were robbed by the Peppers, marched down the stairway, and when Wilson (appellant) said he was going to have them arrested, he was fired at by the Peppers, merely returning their fire in self-protection. The court submitted this issue to the jury, and the only complaint of the charge in

this or any other respect is, that the court erred in his charge in instructing the jury that "if by force and violence" the property was taken from appellant and his friends by the Peppers, they would have the right, etc., to slay the assailants, the contention being that instead of using the words "force and violence" he should have used the words "by assault and putting in fear of their lives or bodily injury." On this point Lee Black testified: "The way the game came to break up, I was sitting over on one side of the table and Mr. Robinson and one of these Pepper boys were sitting to my left and Mr. Wilson and another one were sitting on the bed to my right, and we were playing along there, and finally Mr. Robinson got up and said that he was going downstairs to get a drink of water and a little something to eat, or something like that, and he asked the rest of us if we wanted anything to eat, and when he did that he just taken what money he had, but he picked his money up and this boy that was playing with him says, 'No, you won't take none of my money.' He says, 'You won't quit me at all.' He says, 'You won't go out with none of my money,' and he jerked out his gun and he says, 'You must give me all your money.' He says, 'I am not going to lose no money.' He says, 'I did not come up here to lose no money.' So, when he done that, this boy that was playing with me, pulled his gun out and this one that Wilson was playing with over on the bed, he pulled his gun out, he handed this boy that was playing with me his gun—just handed it across the table and he says, 'Here take my gun while I get the money,' and he just raked up the money—taken Robinson's money. The man that had the two guns, he was just holding them this way (indicating); Robinson was to my left and I was to his right and the boy had the guns this way (indicating); he had one of them on Robinson and one of them on me, and this boy that was playing with Wilson, he had his gun in his hand and he held it there and apparently he was watching these people next to me and so this fellow taken the two guns and one of them made the remark to Wilson, he says, 'Give me what money you have got,' and Wilson handed him some money—I don't know how much, and so one of them says, 'Here, give me what money you have got.' Why, I says, 'I haven't got any money.' And he says, 'Yes, you have; you have got it in your coat pocket there.' So I handed him what money I had. The fellow took all the money that Robinson had in front of him; I don't know how much he gave him, but he taken all the money he had in his hands there." The testimony of Robinson and appellant is in substance the same, and when the court told the jury that if the Peppers, or either of them, by "force and violence" secured the money, he sufficiently presented the issue, and the criticism of appellant is hypercritical. No jury could have been misled, and in fact we think it a proper application of the law to the facts, at least a sufficient presentation of it in the absence of any requested instructions.

Lincoln Pepper had testified to the furniture in the room. In corroboration of him it was permissible for the State to show by the officers

that they examined the room, and there was a table and bed in the room as testified to by Pepper.

O. P. Stanley, an officer, testified that he heard the shots and went at once to the hotel and caught the Pepper boys as they were running from the hotel, and that when he did so Lincoln Pepper, the one who had been shot, said, "They robbed me and shot me as we came down." This was admissible as res gestae of the transaction, it being shown that he was excited, was seeking to get away, and not more than two minutes had elapsed from the time the shots were fired until the exclamation was made. However, on objection of defendant the court excluded the statement, and as it was properly admissible, no error was committed of which appellant can complain.

Lincoln Pepper had testified that he did not live in the same county as Clay Pepper, his cousin, and did not know his general reputation as regards being a peaceable, law-abiding citizen. This testimony was elicited by appellant. Clay Pepper was not a witness in the case, and when he had thus answered the question, and when he had thus testified, the court did not err in excluding what he might have testified as to certain instances in the life of Clay Pepper he had heard, but did not know as a fact. As before stated, he was not used as a witness in the case, and if in fact Lincoln Pepper had heard of certain instances that would indicate he was a dangerous man, neither appellant nor Robinson nor Black had any knowledge of such fact at the time of the difficulty. Willis v. State, 49 Texas Crim. Rep., 139; Patterson v. State, 56 S. W. Rep., 59.

The only other bill of exceptions and complaint in the motion for new trial relates to remarks of the trial judge. It appears that Dr. Webb Walker had testified as to the nature of the wound received by Lincoln Pepper, its location, etc., when defendant sought to question the witness as to the force of a bullet, etc., the attorney representing the State objecting. The court sustained the objection, and when the testimony was insisted on remarked, "that it did not appear that the witness was an expert upon the force of bullets, and for the purposes of this inquiry it would make no difference whether the bullet hit the man or not, if the pistol used was a weapon that is reasonably calculated to produce death or serious bodily injury." Under the facts of this case this was a correct statement of the law as the parties were both in one room—the lobby of the hotel. The remark could not have been injurious to appellant, for his pistol shot hit Pepper, while Pepper's shots missed him, and the court in his instructions so presented the law as to justifiable homicide as would cause this remark to be really beneficial instead of hurtful to appellant.

As before stated, the issues were sharply drawn, but they were fairly presented in the court's charge, and the jury finds the testimony of the State to be true, and under such circumstances we will not disturb the verdict.

The judgment is affirmed.

*Affirmed.*