C. B. McBride v. The State.

No. 13312. Delivered April 23, 1930.
Reported in 27 S. W. (2d) 1100.

The opinion states the case.

*V. L. Shurtleff* of Breckenridge, *Forrest Wright* of Cisco and *Blanton, Blanton & Blanton* of Albany, for appellant.

*J. Robt. Black,* District Attorney of Baird, *L. H. Welch,* District Attorney of Breckenridge, *McLean, Scott & Sayers* of Fort Worth and *A. A. Dawson,* State's Attorney of Austin, for the State.

LATTIMORE, JUDGE.—Conviction for murder; punishment, twenty-five years in the penitentiary.

There appear three counts in the indictment, two of which charge murder with malice aforethought, the other murder without such malice. The court in his charge told the jury that they could not fix a penalty of more than five years in the event of conviction, unless they believed beyond a reasonable doubt that the defendant acted with malice aforethought in the killing. The verdict of the jury was in general terms and assessed a punishment of twenty-five years in the penitentiary. Under all the authorities the verdict and judgment could be applied to either of the counts charging malice aforethought.

Appellant had lost a quantity of well drilling tools which were necessary for him to have in order to carry forward the drilling of an oil well. He seems to have suspected deceased as being either the taker of said tools or the purchaser of same from some one who had taken them. He talked to a good many people and made investigations, and had conversations with deceased, which things led up to the killing. The killing occurred in Breckenridge, Stephens county, Texas, and following a trial had in that county, the case was sent upon change of venue to Shackleford county where this trial occurred.

Appellant vigorously insisted that immediately before the shooting Glenn, deceased, who was a much younger and stronger man than appellant, attacked him,—followed him out in the street, knocked him down, and that finally he, appellant, got out his pistol. It appears that Glenn then caught one Miller and tried to hold Miller between himself and appellant. Appellant fired one time, a shot which caused Glenn's death. There is much testimony in the record from the State witnesses tending to support appellant's theory of the case, which was that he shot in defense of himself against an attack made by Glenn.

There is complaint of the introduction of evidence that after the shooting, and after appellant had been arrested and taken away from the scene, and while deceased was being carried to a drug store, a Mr. Cooper approached deceased, and,—according to the testimony of Mr. Harrison,—deceased said: "You told me right, Cooper. You told me he was going to kill me." Testimony of this conversation was objected to. The bill presenting the complaint is qualified by saying this was admitted as part of the res gestae. It appears plain that the statement was not the event or thing done, speaking through the witness, but that same appears wholly lacking in such necessary element of res gestae. That it was a reference to some conversation had between deceased and Cooper at some former time,—recollection of which was brought to the mind of deceased by the appearance on the scene of Mr. Cooper, —is very apparent. The test of res gestae is, was that which was said—the facts talking through the declarant, or such declarant talking about the event set forth in the declaration. Instinctiveness is requisite. Bradberry v. State, 22 Texas Crim. App. 278; Bronson v. State, 59 Texas Crim. Rep. 17. If the statement be but the narration of some former occurrence, and not a spontaneous outcry or statement concerning the thing then done,—it is not admissible. Porterfield v. State, 141 S. W. 968; Fuller v. State, 50 Texas Crim. Rep. 20.

Appellant sought a new trial because of misconduct of the jury, attaching to his motion the affidavit of one juror who said he was for a penalty of ten or fifteen years upon retirement, and that another juror was for ten years, but that some other juror stated in the jury room that appellant had been given forty-five years on a former trial. When twenty-five years was suggested as an appropriate penalty, this juror said he was still in favor of ten or fifteen years, and that others of the jury said that twenty-five years was

twenty years lower than appellant got at Breckenridge. They said the former verdict should not be cut too much. Upon presentation of the motion for new trial the trial heard the oral testimony of three jurors. Juror No. 1, the maker of the affidavit above referred to, affirmed that the statement was made in the jury room that on appellant's trial at Breckenridge he got forty-five years in the penitentiary, and that they ought not to cut him down much from what he got over there. He said these facts were referred to two or three times, and that after these statements were made the jurors agreed to twenty-five years penalty.

The next juror testified that before a verdict was reached and while the jury were considering the penalty, it was stated that the appellant had gotten forty-five years at a former trial at Breckenridge, and if they cut it down too much it might influence him in getting a new trial. He testified this was mentioned once or twice. Evidently there was discussion of this among the jurors, for this juror further swore that almost everybody said they would not let this influence them. This juror was asked by the court as follows: "Didn't influence you any did it Floyd, the fact that he got forty-five years at Breckenridge?" To this the juror replied: "Not particularly."

Juror No. 3 also heard it stated in the jury room that appellant got forty-five years on a former trial at Breckenridge, and that the jury ought not to cut too far below that for it would give him a new trial. He said some men were holding out for ten or fifteen years, and some one said to give him twenty-five years would be twenty years less than he got at Breckenridge. At the time this juror went on the jury he did not know appellant had gotten forty-five years at a former trial.

That such reference to and discussion of the result of a former trial was misconduct for which a new trial should have been granted is without doubt. McDougal v. State, 81 Texas Crim. Rep. 179; Clements v. State, 69 Texas Crim. Rep. 369; Jones v. State, 103 Texas Crim. Rep. 527; Taylor v. State, 108 Texas Crim. Rep. 105; Art. 759, C. C. P.

We commend the practice of many trial courts in telling their juries, orally upon convening of court for jury trials and in their charges, that if the jurors know or have heard anything other than from the witness stand concerning the person on trial or the case, they should not mention or discuss same with any other juror. It is again suggested that new trials in the courts below, if demanded for

such misconduct,—be not only granted, but the grounds therefor be emphasized, and thus brought to the attention of the jurors by the action of the courts with which they are familiar. Few jurors ever learn why the appellate courts reverse cases, but most of them acquire knowledge why their local courts grant new trials.

For the errors above mentioned, the judgment will be reversed and the cause remanded.

*Reversed and remanded.*