## C. B. McBRIDE v. THE STATE.

No. 14884.   Delivered February 17, 1932.
Rehearing Denied June 15, 1932.
Reported in 51 S. W. (2d) 385.

The opinion states the case.

*V. L. Shurtleff,* of Breckenridge, *Russell & Russell,* of Baird, and *Stinson, Hair, Brooks & Duke,* of Abilene, for appellant.

*J. R. Black,* District Attorney, of Baird, *B. J. Dean,* District Attorney, and *L. H. Welch,* former District Attorney, both of Breckenridge, *McLean, Scott & Sayers,* of Fort Worth, and *Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

CALHOUN, JUDGE.—Conviction is for murder; the punishment, twenty-one years in the penitentiary.

This the third appeal of this case. The first appeal is reported in 110 Texas Crim. Rep., 308, 7 S. W. (2d) 1091, and the second appeal is reported in 115 Texas Crim. Rep., 378, 27 S. W. (2d) 1100.

The facts, in brief, are as follows: Appellant lost some well-drilling tools. Appellant believed that deceased was concerned in stealing his property. State's witnesses testified that appellant threatened the life of deceased. Shortly before the homicide, appellant accused deceased of either having or knowing about his lost well-drilling tools. Just before the homicide, deceased, at the instance of appellant, went to see appellant. A difficulty ensued. The appellant testified that deceased cursed him and began striking him with his fists and knocked him down and told him he would cut his throat. Appellant got to his feet and pulled a pistol. He further claimed that a party who had been standing near was holding deceased, and deceased was struggling to free himself; that deceased freed himself and faced appellant in a crouching position with his right hand in his pocket. Believing that deceased was preparing to cut his throat, he fired on deceased. Several witnesses for the state testified that deceased was attempting to place a bystander between him and appellant shortly before appellant fired; that a scuffle ensued between

412

·deceased and a bystander, with the result that the bystander freed himself and about that time the shot was fired. State's witnesses, who examined the deceased's wounds, testified that the bullet entered from the back.

By bills of exception Nos. 2, 3, 4, 5, and 6, appellant complains of the action of the trial court in admitting part of the testimony of the witnesses, John Denman, Henry Denman, A. F. Martin, Joe Asbury, and Jess Fincher. The testimony complained of by said witnesses was to the effect that a short time before the homicide they made a trip with the deceased, John Glenn, up to Jones county near Anson, Texas. The· evidence shows further that Henry Denman, John Denman, and Jess Fincher went together; that the said Henry Denman was driving his truck and his brother, John Denman, was driving another truck belonging to him, and Jess Fincher was driving a truck for Billy Ensign; that they were employed by the deceased to go up there and haul some well-drilling equipment; that they went to the McBride well, and while they were there, the deceased and Mr. A. F. Martin came to said well in a car. From this well they got two bailers, a case wagon, and a bit keg. They also testified that they had gotten some stuff from what was known as the Stebbin well. All of said witnesses denied that they had gotten any of the property that the appellant claimed to have lost. The appellant objected to the introduction of the testimony and moved to exclude the same upon a number of grounds. The trial court qualified all of said bills substantially to the effect that the evidence in the case showed that the defendant, C. B. McBride, prior to the killing in question, talked to the witness, O. B. Cooper, at Anson, Texas, and told him in substance that John Glenn had stolen the tools in question; that the defendant, McBride, testified that he talked to the witnesses, Henry Denman, John Denman, and Joe Asbury, and each of them told him about the trip they had made from Breckenridge to the well in Jones county and about hauling tools to Breckenridge; that the defendant testified that he told John Glenn, the deceased, about making the trip from Breckenridge to the Jones county well; that the testimony further showed by the defendant himself that he went out to these wells prior to the homicide in Jones county and talked to the farmer who lived near the wells, and he went to the wells just a few days before the homicide and. discovered that certain of his tools were gone. The deceased and his men and trucks had been in there and had removed certain tools from the well. He testified that the Mr. Willis, the farmer who liver near the well, gave him a slip of paper signed by Harry Anderson and Ray Stebbins, showing what the deceased and his men had gotten from these wells; that the said Willis told him that Martin and Glenn, the deceased, had given him the list; that the defendant had the slip of paper in question and it was introduced in evidence by the defendant upon the trial

of this case; that the testimony was admitted on the theory that it was the history of the case and part of the transaction, it being the theory of the state that defendant killed the deceased because he thought Glenn had stolen his tools or had removed them from his well in Jones county and knew where they were located.

The difficulty over which this homicide occurred grew out of the very transaction testified to by said witnesses and some of them, at least, had been interrogated about the same by appellant before the killing, and he knew what tools had been taken from the well, and, in the light of and in connection with the other testimony adduced upon the trial, this evidence was relevant testimony and the admission of same was not reversible error. "Testimony which isolated from the other facts in the case would be irrelevant may become relevant when viewed in the light of and in connection with other testimony adduced on the trial." Branch's P. C., sec. 97; also, Campbell v. State, 15 Texas App., 513; Miller v. State, 31 Texas Crim. Rep., 637, 21 S. W., 925, 37 Am. St. Rep., 836; Williams v. State, 40 Texas Crim. Rep., 501, 51 S. W., 220; Marchan v. State, 45 Texas Crim. Rep., 214, 75 S. W., 532.

By bill of exception No. 7, appellant complains that the state was permitted to prove by the wife of deceased, over the objection of the defendant, that she and deceased left home just before the killing to go to the Sager Hotel. We see no error in receiving said evidence. See Dover v. State, 102 Texas Crim. Rep., 113, 277 S. W., 675.

Bill of exception No. 8 complains of the trial court permitting, over the objection of the appellant, the wife of deceased to testify that her husband, the deceased, did not have any weapon on him or with him that evening, such as a gun or knife, and did not own a gun or knife. Appellant objected to said testimony because it was no proof of facts known to the defendant at the time and because same could not have had any effect on his acts or conduct; because such facts did not occur in his presence and would not have been incriminating evidence against him and would not be binding upon him and would be prejudicial to his cause and mitigated against his rights of self-defense. The testimony of the wife of deceased as to her husband not having any weapon on him or with him that evening, such as a gun or knife, was clearly admissible. A blanket objection having been made to the admissibility of all her testimony, not only that her husband did not have any weapon on him or with him that evening, but also to that part of the testimony to the effect that he did not own a gun or knife, without any specific objection or motion to strike out the inadmissible portions, appellant is not in a position to complain. The court was not given an opportunity to rule upon the inadmissible portions separate and apart from the statements, which were clearly admissible. See Flores v. State, 110 Texas Crim. Rep., 481, 9 S. W. (2d) 342; Bedgood v. State, 109 Texas Crim. Rep., 104,

3 S. W. (2d) 99; Nugent v. State, 101 Texas Crim. Rep., 86, 273 S. W., 598; Scogin v. State, 100 Texas Crim. Rep., 389, 273 S. W., 575.

By bill of exception No. 10, it is shown that, while the appellant was offering his testimony, he placed on the stand as a witness in his behalf, one Bond, who testified, among other things, that he was an oil well digger and knew the deceased in his lifetime, and a few years before the killing in question he had lost about $4,000 worth of tools, and he and a Mr. Belcher went to Breckenridge, Texas, to see the deceased, and in deceased's warehouse found his tools and identified them and got them. His tools were stolen from Vernon, Texas; that soon after he had identified the stolen stuff, the deceased came in and he told the deceased that the tools belonged to him, and deceased said, "You are a liar, they are not yours," and the witness replied, "My brand is on the tongs, it has been hammered out." He further testified that the deceased then got angry and started to get a piece of iron, and Mr. Belcher told him, in substance, not to do it. The bill further shows that thereafter, in rebuttal, the state placed Belcher on the witness stand, and he testified for the state as follows: "When I was there with this man (meaning Bond), if John Glenn (meaning deceased) called Bond a liar or a g— d— liar, I didn't hear it. John Glenn did not pick up a piece of pipe or start after a piece of pipe and I did not interupt, intercept, or stop him. If John Glenn started to pick up a piece of pipe, I did not see him."

This testimony was objected to upon a number of grounds. The bill further shows that the appellant had taken the stand and testified in his own behalf, and he testified that previous to the time of the fatal difficulty and some months previous thereto a Mr. Tom Morrisey, who was former vice-president of the Panhandle Oil & Refining Co., had told him about the transaction that the witness Bond was supposed to have had with the deceased about losing some tools; that Morrisey had given him substantially the information with reference to said matter that Bond had testified to on this trial, and this was all the knowledge or information appellant had received about the alleged transaction about which Belcher testified occurred previous to the killing for which he was on trial. We fail to perceive how appellant can now claim that a witness which he offered on a material point could not be contradicted as to what occurred upon the occasion testified about. The state was not bound by the testimony of appellant that Morrisey had made this statement, but could contradict the appellant, as well as any subsequent witness brought by appellant for the purpose of corroboration, in any legitimate way.

Bill of exception No. 11 complains of the asking, by the state's attorney, of the witness, Roy Hickey, the question as to whether he knew the general reputation of the deceased as being a peaceable, law-abiding

citizen and for truth and veracity. The bill also complains of the fact that the state's attorney stated to the court, in the presence of the jury, that other witnesses called were to be interrogated along the same line and that, in view of the court's ruling, they would not be further needed and therefore said witnesses were excluded. The bill, as qualified, shows that when said question was asked said witness, the court promptly sustained appellant's objection, and the question was not admitted. The bill further shows that when the remarks of the state's attorney, in asking that the other witnesses be discharged, were made, the appellant objected to same, and the court promptly sustained same and made the remark, "It is not fair." The bill further shows that the court sustained each and all of the objections made by appellant regarding said matter, and that no motion was made by appellant regarding said matter and that no motion was made by appellant to instruct the jury not to consider any of the proceedings, and that it was not of such a character as the court deemed necessary to instruct on in the absence of a special request. It seems that the appellant was apparently satisfied with the statements of the court to the state's counsel that such statement was unfair to the appellant, which apparently was a rebuke to the state's attorney for attempting to offer such evidence. Under this state of the record, we do not consider that said bill presents such error as would require a reversal.

Bill of exception No. 12 complains of the action of the trial court in permitting the witness, Cooper, to testify to a statement of the deceased within a few minutes after the shooting occurred. The statement was, "He called me off and shot me without a chance." The court qualified said bill to the effect that the evidence disclosed that, from the time Glenn, the deceased, received the fatal wound until he was carried upstairs, during which time the statement of the deceased complained of in this bill occurred, four minutes time elapsed; that the deceased, after being shot, was excited and bleeding profusely. It was further shown by witnesses who were present during the time the deceased was being taken upstairs and immediately after he had been taken to the doctor's office, that the deceased said, "Doctor, I am going to die." The statement by deceased complained of was properly admitted in evidence as res gestae. "Statements made by a deceased a short time after the homicide as to how it occurred are admissible as res gestae, though they may not be admissible as dying declarations, where circumstances prevent earlier statements, or suffering excludes idea of fabrication." Branch's P. C., sec. 83. See, also, Pilcher v. State, 32 Texas Crim. Rep., 560, 25 S. W., 24; Johnson v. State, 67 Texas Crim. Rep., 441, 149 S. W., 165; Davis v. State, 70 Texas Crim. Rep., 37, 155 S. W., 546, 549.

By bill of exception No. 1, appellant brings forward 23 exceptions taken to the court's charge. Among them, appellant objected to the failure of the court to instruct the jury on aggravated assault. The

objection was not well taken. The weapon used by appellant was per se deadly. The evidence showed that he intentionally shot the deceased with a pistol. The law presumes under such circumstances an intent to kill. Hadnot v. State, 110 Texas Crim. Rep., 109, 7 S. W. (2d) 566; Collins v. State, 108 Texas Crim. Rep., 72, 299 S. W., 403; Myatt v. State, 114 Texas Crim. Rep., 516, 26 S. W. (2d) 915. The issue of aggravated assault was not raised.

Appellant, by timely exception, complains of paragraph 5 of the court's charge, which is as follows: "If you believe from the evidence beyond a reasonable doubt the defendant is guilty of murder as charged in the indictment, then you are instructed that you may consider the condition of the mind of the defendant at the time of the killing, if any, in determining the punishment, if any, to be assessed against the defendant, and that, as going to show the condition of the mind of the deceased at said time, you may take in consideration all the relevant facts and circumstances surrounding the killing and the previous relationship existing between the defendant and the deceased, together with all the relevant facts and circumstances in evidence."

The appellant objected to said paragraph and the court's charge as a whole, and says that the charge nowhere expressly submits the condition of the defendant's mind to the jury with proper instruction as to the effect of such condition on the punishment, provided they believe from the evidence beyond a reasonable doubt that the defendant is guilty of murder as charged. We do not believe that said exception is well taken. Immediately following section 5 of said charge, in paragraph 6, the court charged as follows: "If you believe from the evidence beyond a reasonable doubt the defendant is guilty as charged in the indictment, then you are further instructed that unless from all the facts in evidence you believe beyond a reasonable doubt the defendant was prompted and acted with malice aforethought, you can not assess his punishment at more than 5 years in the state penitentiary."

The court had previously defined malice aforethought in paragraph 2 of his charge. Under the decisions of this court, taking the paragraphs together, the charge sufficiently applied the law to the facts. Crutchfield v. State, 110 Texas Crim. Rep., 420, 10 S. W. (2d) 119; Mercer v. State, 111 Texas Crim. Rep., 657, 13 S. W. (2d) 689; Myatt v. State, 114 Texas Crim. Rep., 516, 26 S. W. (2d) 915.

As we understand the other objections to the court's charge, they are criticisms to isolated portions of the charge and to the charge as a whole. When this is done, this court will look to the charge as a whole to ascertain whether said charge complained of fairly covered every issue raised by the evidence in the case. A reading of the charge will disclose that the court instructed the jury affirmatively with respect to appellant's theory of self-defense and applied the law to the facts. The court

charged that appellant would have the right to defend upon apparent danger viewed from his standpoint, even though no danger actually existed, and also charged with reference to the reasonable appearance of danger. The court also recited every material phase of the defensive evidence offered by appellant, and told the jury that, if they believed or had a reasonable doubt as to the existence of such facts, they would acquit the appellant of any offense. Reviewing the charge as a whole, we perceive no error that would call for a reversal under article 666, Code of Criminal Procedure.

The appellant contends that the evidence is not sufficient to support the verdict. While there is a controversy as to the evidence, the controverted issues are peculiarly within the province of the jury to solve. Having the benefit of all the evidence and of seeing the witnesses and hearing them testify, they have found the issues against appellant and we see no reason for disturbing their verdict under the evidence in the case.

Finding no reversible error in the record, the judgment is affirmed.

*Affirmed.*

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.

### ON MOTION FOR REHEARING.

LATTIMORE, JUDGE.—This case was tried in March, 1931, prior to the taking effect of chapter 60, Acts Regular Session, 42nd Legislature (Vernon's Ann. P. C., art. 1257c), and must be passed on in the light of the law as it then was. (Vernon's Ann. P. C., arts. 1256-1257b).

It is insisted that we were wrong in saying that paragraphs five and six of the court's charge, which are copied in our former opinion, sufficiently presented the law of the rights of the accused growing out of what he claims to have been the condition of his mind when he shot. Our understanding of the law applicable was set forth in Crutchfield v. State, 110 Texas Crim. Rep., 420, 10 S. W. (2d) 119. The jury in this case were authorized by the charge to look to all relevant facts and circumstances in evidence in determining whether the accused acted upon his malice aforethought. This was the pertinent issue before the enactment of the recent act of the Legislature above referred to. The question as to whether the jury believed that appellant was actuated by malice aforethought in what he did was pointedly set before them in paragraph six of the charge. At the time of this trial the law went no further than to require that the jury determine from all relevant and pertinent facts in issue (1) whether the homicide was murder, and (2) whether it was upon malice aforethought. We have a different state of facts in certain cases under the law as it was changed by the act referred to. See Butler

v. State, 121 Texas Crim. Rep., 288, 51 S. W. (2d) 384, opinion this day handed down. We perceive no error in the matters complained of.

We are not able to agree with appellant's contention that the court should have charged the jury that in passing upon the guilt of the accused they might take into consideration his state of mind. We do not believe this to be a sound proposition.

Appellant's exception to paragraph 8 of the court's charge for its failure to tell the jury that before they could convict appellant they must believe that he intended to kill deceased seems to present nothing tangible. The jury were told in said paragraph that, if they found from the evidence beyond a reasonable doubt that appellant "voluntarily and with malice aforethought" killed the deceased herein by shooting him with a gun, etc., they should convict. We think we sufficiently discussed this proposition in the Crutchfield case, supra. There was no question raised by the facts in any wise casting doubt upon the proposition that the weapon used by appellant was a shotgun, and we see no application to this case of what was said by us in Fitch v. State, 37 Texas Crim. Rep., 500, 36 S. W., 584, or in Claxton v. State, 105 Texas Crim. Rep., 308, 288 S. W., 444, 447.

The trial court in paragraph 11 of the charge enumerated a number of things which appellant claimed had been said or done by deceased at the time of or near to the homicide, and which he claimed caused him to do the shooting. The court told the jury, that if they found that part or all of these things created in the mind of appellant a reasonable expectation or fear of death or serious bodily injury, and that so believing he shot and killed deceased, they should find him not guilty. We doubt the wisdom and propriety of the court undertaking to enumerate these facts, but regard the charge as favorable to appellant.

We fail to comprehend any reason for the exception to the charge of the court because of its failure to tell the jury that no verbal provocation would justify an assault. There was no charge on provoking the difficulty, or any other limitation of the right of self-defense, which would have called for the charge mentioned if such charge had been proper in any event. No special charge was asked on the point.

Appellant insists that the conduct of the state's attorney in asking a witness if he knew the general reputation of deceased while living for being a peaceable, law-abiding citizen or otherwise, and for truth and veracity, should constitute reversible error. The record shows appellant objected when the question was asked, and the court sustained the objection. In the bill it is made to further appear that the attorney representing the state, after the court sustained the above objection, said that all of these witnesses (referring to five witnesses whose names had been called) were called for that purpose; also that appellant further objected to the state thus putting these witnesses before the jury, and that

the court sustained the objection. The trial court does not quite agree with the statement of these matters in the bill, and qualifies it by setting out a number of things which were in testimony which might be regarded as making it a somewhat close question as to whether the reputation of the deceased was an issue. The court also recites that witnesses were coming in and being sworn and put under the rule, and that, at the same time the witness who was asked the question, objection to which was sustained was sworn, other witnesses were also sworn, and that, after the objection was sustained said attorney stated to the court that he had the other witnesses for the same purpose, and, the objection having been sustained, he would have no need for them, and that they might be permitted to go, and that thereupon they were excused from further attendance upon the court. We are not inclined to agree with appellant that there was error in this for which the case should be reversed. The manner and tone of the occurrence as affecting fair procedure, was heard and observed by the court below, and we respect his ruling when an abuse of his discretion is not shown. The probable harm resulting from the attempt of the state to prove, in manner and form as set out in Childress v. State, 92 Texas Crim. Rep., 215, 241 S. W., 1029, that the *accused* was a man of bad reputation as a law-abiding citizen, when there was no issue to which such question might have been pertinent, is evident, and we observe that such was the case in all the cases cited by appellant as approving what was said by us in the Childress case, supra. We are cited to no case and believe none can be found holding it reversible error to merely offer to prove the reputation of deceased, and especially under facts such as those appearing in this record. We think the principle involved in the Childress case, where the state offered before the jury to prove that the accused was a man of bad reputation, and that involved in the instant case, where the question was with reference to deceased, are altogether different, and that there is no analogy between the two propositions.

Being unable to agree with appellant, the motion for rehearing will be overruled.

*Overruled.*