Raul Heredia SAMANIEGO, Appellant,

v.

The STATE of Texas, Appellee.

No. 08–81–00046–CR.

Court of Appeals of Texas,
El Paso.

April 21, 1982.

John T. Garcia, Luis C. Labrado, El Paso, for appellant.

Steve W. Simmons, Dist. Atty., R. Bradford Stiles, Asst. Dist. Atty., El Paso, for appellee.

Before STEPHEN F. PRESLAR, C. J., and WARD and OSBORN, JJ.

## OPINION

OSBORN, Justice.

A jury found the Appellant guilty of murder while committing a robbery, and his punishment was assessed at life imprisonment. We affirm.

On the evening of December 11, 1978, Armando Tarin, Jr. was shot once in the stomach while working at a small neighborhood grocery store in El Paso. He died about three hours later. On the evening of December 13, 1978, the occupants of a car were stopped on suspicion that they were suspects in a robbery committed that evening and the Appellant and three other males were arrested. A search of the car disclosed several weapons. Two days later, the Appellant gave the police a statement in which he confessed to having shot Armando Tarin, Jr.

The first ground of error contends the trial court erred in admitting into evidence the statement of the deceased as a dying declaration. The first officers to arrive at the grocery store testified when they arrived Mr. Tarin was on the floor in obvious pain from a wound. He told them, "They shot me, they robbed me." He did not identify who the offenders were.

Article 38.20, Code of Criminal Procedure, specifies the requirements to establish a dying declaration. The Appellant argues that the State did not comply with the first requirement which requires satisfactory proof "[T]hat at the time of making such declaration he was conscious of approaching death, and believed there was no hope of recovery."

■ At the time the statement was made, the declarant was on the floor bleeding from a gunshot wound. He appeared nervous and was in pain. He had difficulty breathing. His voice was rather weak. He died within three hours. It is not essential that the declarant state in specific terms that he is conscious of impending death. *Moore v. State*, 127 Tex.Cr.App. 637, 78 S.W.2d 189 (1934). One circumstance which is very relevant is the apparent character of the wound. 1A Ray, Texas Law of Evidence, Section 976 (1980). The wound in this case caused the declarant great pain; he clutched the wound and must have realized he was bleeding. He was lying on the floor doubled up and unable to breathe normally. The shot hit in an area where vital organs would be affected. He had to have several minutes to reflect on his condition before the police arrived. We conclude the evidence was admissible as a dying declaration.

If we be mistaken about proof of a dying declaration, the evidence was admissible as an exception to the "Hearsay" rule because it qualified as a spontaneous declaration of objective facts. The basis for the rule is set

forth in 1A Ray, Texas Law of Evidence, Section 913 (1980), which states:

The basis underlying the admission of this class of evidence is a psychological one, namely, the fact that when a man is in the instant grip of violent emotion, excitement or pain, he ordinarily loses the capacity for reflection necessary to the fabrication of a falsehood, and "the truth will out." The test to be applied in determining the admissibility of this class of evidence is the spontaneity or impulsiveness of the declaration.

Probably the two most frequently recurring types of declarations which gain admission under this rule are declarations made by persons injured in accidents, and those made by the victims of crimes of violence. . . .

Also *see: Cook v. State*, 398 S.W.2d 284 (Tex.Cr.App.1965); *McBride v. State*, 121 Tex.Cr.App. 409, 51 S.W.2d 385 (1932); and *Wilson v. State*, 70 Tex.Cr.App. 627, 158 S.W. 512 (Tex.Cr.App.1913). Ground of Error No. 1 is overruled.

The second and third grounds of error contend the trial court erred in admitting into evidence State's exhibit 56 and the testimony relating thereto in violation of the "Hearsay" and "Best Evidence" rules. The officers testified that when they arrived at the store, the cash register drawer was open. The following day, Frausto Tarin, the deceased's uncle, prepared the store's "Daily Cash Check Out Sheet" which was admitted as State's exhibit 56. This exhibit reflects that at the closing on December 11, 1978, the cash register contained $75.00 in food stamps, $171.04 in checks and $272.22 in cash. The exhibit shows that the cash register reflected sales of $604.91, that it had $120.00 in cash to begin the day and that $62.18 was paid out for merchandise. This left a cash shortage of $144.47. The cash register tape which would reflect all transactions and each individual sale was lost and never offered in evidence.

■ The "Best Evidence" rule requires that to prove the contents of a document, the original document must be produced. 2 Ray, Texas Law of Evidence, Section 1561 (1980). In this case, exhibit 56 was an original document. That exhibit showed a summary of beginning cash, sales, cash paid out and food stamps on hand at the end of the day. This exhibit was offered as an original exhibit to show a summary of the day's activities and the cash shortage at the end of the day. Had a witness attempted to testify as to the figures on the daily sheet, then the "Best Evidence" rule would have been applicable. The missing cash register tape was not the best evidence of the compilation of figures shown on exhibit 56. . The tape did not reflect a breakdown as to particular coins and bills found in the cash register, nor would the tape show the amount of cash missing. The State did offer "Daily Cash Check Out Sheet[s]" for a period of about one month, most of which included cash register tapes for each particular day, but those tapes do not reflect total daily sales; that figure is taken each day at closing directly from the cash register itself and recorded on the "Check Out Sheet." In addition, it must be noted that the rule requiring the production of original writings applies only where the purpose of the evidence offered is to prove the contents of the document. 2 Ray, Texas Law of Evidence, Section 1566 (1980). In this case, neither testimony nor exhibit 56 was offered to show the contents of the lost cash register tape.

■ Exhibit 56 was qualified as a business record under Article 3737e (Tex.Rev. Civ.Stat.). Armando Tarin, Sr., the owner of the store, testified that it was customary to keep "Daily Check Out Sheet[s]" and that they were made in the regular course of the business by store employees. He started to prepare the sheet on December 11, 1978, but was too upset with the shooting of his son, and he had his brother, Frausto Tarin, who operates one of the other stores owned by Mr. Tarin, complete the report the day after the shooting. The exhibit was admissible as a business record. *Morgan v. State*, 503 S.W.2d 770 (Tex.Cr. App.1974). As a business record, the exhibit qualified as an exception to the "Hearsay" rule. 1A Ray, Texas Law of Evidence, Chapter 21 (1980). Grounds of Error Nos. 2 and 3 are overruled.

The next ground of error contends the trial court erred in admitting into evidence the statement of Appellant because it was not made knowingly, willingly or voluntarily. The court conducted a full hearing as to the admissibility of the statement. The officer who took the statement testified concerning the *Miranda* warning given to the Appellant before the statement was taken. He said the statement was given voluntarily without use of any force, threats, promises or coercion. There was no testimony to the contrary. The statement was made by Appellant in Spanish, typed by the officer in English and then read back to the Appellant in Spanish. After the officer who interpreted into Spanish read the statement to the Appellant in his native language, the Appellant said it was correct and signed it. The trial court made extensive findings which support the admissibility of the statement. We conclude the statement was admissible. *Pete v. State,* 501 S.W.2d 683 (Tex.Cr.App.1973); *Gonzales v. State,* 148 Tex.Cr.App. 401, 187 S.W.2d 910 (1945). Ground of Error No. 4 is overruled.

Ground of Error No. 5 states the trial court erred in admitting into evidence State's exhibits 66 and 67 because they were the product of an illegal search. The complaint is that the gun (exhibit 66) and the bullets, with one fired casing, (exhibit 67) were obtained after an unlawful arrest and search. Appellant challenges the sufficiency of the articulable circumstances leading to the police officers' investigatory stop of the vehicle in which the Appellant was a passenger, the subsequent warrantless arrest of Appellant and the search of the vehicle.

On the night of December 13, 1978, at around 11:30 p. m., the arresting officers were on patrol when they received an aggravated robbery broadcast over their car radio describing three Mexican males who had held up a convenience store while holding revolvers. After arriving at the store, the officers received descriptions that the individuals were wearing denim-type clothing, two outfits being darker in color than the third, and one of the suspects was wearing a cap. After leaving the store, the officers received another broadcast regarding a disturbance at an apartment complex and were responding to that call when they stopped at a red light next to a vehicle occupied by four Mexican males whose clothing and cap matched those of the robbery suspects. The officers testified that the occupants of the vehicle observed them closely and appeared to be nervous. At approximately 12:10 a. m., the officers stopped the vehicle, and as they approached the other car they could see a television, a shotgun and a revolver in the back seat of the car. The individuals were ordered out of the vehicle, placed under arrest and a search of the car disclosed two revolvers and under the back seat a third gun which was subsequently offered as exhibit 66 and shells and one fired casing which were identified and offered as exhibit 67. In *Shaffer v. State,* 562 S.W.2d 853 (Tex.Cr.App.1978), the court discussed the authority of police officers to stop and detain suspicious individuals and the necessity for specific articulable facts to warrant arrest and detention of a suspect. The court held that detention based "on a mere hunch" is illegal. The court said:

> There must be a reasonable suspicion by the officer that some activity out of the ordinary is occurring or had occurred, some suggestion to connect the detained person with the unusual activity, and some indication that the activity is related to crime. . . .

In this case, the arresting officers were aware of a recent robbery in the neighborhood by Mexican males dressed in similar clothing and one of whom was wearing a cap. They were aware that the offense involved the use of firearms, and the officers could see one pistol in the back of the car before any arrest was ever made. We conclude that the arrest of these individuals in the immediate neighborhood very shortly after the offense occurred with the description available to the officers was sufficient to justify their stopping the vehicle and arresting the occupants of the car.

We also conclude that the search of the vehicle which disclosed the gun and the

bullets and spent casing was proper and legal. In *New York v. Belton*, 453 U.S. 454, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981), Mr. Justice Stewart, writing for the court, recognized the need for a straightforward rule with regard to the constitutional right to search a vehicle where there has been a lawful custodial arrest of the occupants of an automobile. Following the straightforward rule for the search of a person in lawful custodial arrest as set forth in *United States v. Robinson*, 414 U.S. 218, 94 S.Ct. 467, 38 L.Ed.2d 427, the court said:

> When a person cannot know how a court will apply a settled principle to a recurring factual situation, that person cannot know the scope of his constitutional protection, nor can a policeman know the scope of his authority. While the Chimel case established that a search incident to an arrest may not stray beyond the area within the immediate control of the arrestee, courts have found no workable definition of "the area within the immediate control of the arrestee" when that area arguably includes the interior of an automobile and the arrestee is its recent occupant. Our reading of the cases suggests the generalization that articles inside the relatively narrow compass of the passenger compartment of an automobile are in fact generally, even if not inevitably, within "the area into which an arrestee might reach in order to grab a weapon or evidentiary item." *Chimel* [*v. California*, 395 U.S. 752] supra, at 763, 23 L.Ed.2d 685, 89 S.Ct. 2034 [at 2040]. In order to establish the workable rule this category of cases requires, we read Chimel's definition of the limits of the area that may be searched in light of that generalization. Accordingly, we hold that when a policeman has made a lawful custodial arrest of the occupant of an automobile, he may, as a contemporaneous incident of that arrest, search the passenger compartment of that automobile.

Based upon that holding, we conclude that the seizure of the gun from the back seat of the automobile was not an illegal seizure, that Appellant's constitutional rights were not violated, and that both the gun, the bullets and the spent cartridge were properly admitted into evidence. Ground of Error No. 5 is overruled.

Ground of Error No. 6 asserts that the statement obtained from the Appellant was the product of an illegal arrest and it should not have been admitted into evidence. Having previously concluded that both the arrest and the search were lawful and that there was no denial of constitutional rights in the taking of the statement, Ground of Error No. 6 is overruled.

The last ground of error asserts that the evidence is insufficient to support the jury conviction. Having previously concluded that the critical evidence was admissible into evidence, that the arrest and search were lawful, that the statement of the Appellant was admissible, and that the evidence, including the "Daily Check Out Sheet" established the robbery, and reviewing the sufficiency of this evidence in a light most favorable to the jury verdict, we find it sufficient to support the conviction. *Vaughn v. State*, 607 S.W.2d 914 (Tex.Cr. App.1980); *Ellett v. State*, 607 S.W.2d 545 (Tex.Cr.App.1980).

The judgment of the trial court is affirmed.