## Tom Young, Alias Jack Wade v. The State.

### No. 3445.   Decided January 24, 1906.

**1.—Murder in First Degree—Husband and Wife—Void Marriage—Testimony Before Judge.**

Upon a trial for murder where upon request of defendant's counsel the jury was retired and the judge presiding passed upon the admissibility of the testimony of a State's witness, who claimed to be defendant's wife, and it developed that defendant had never been divorced from his first wife to whom he was legally married, there was no error in the court hearing the testimony of said first wife as to her marriage to the defendant; besides, if error, said fact was established by other testimony, and all of said testimony on this point was never introduced before the jury, but was admitted before the judge in absence of the jury; and there was no error in afterwards admitting to the jury the testimony of said witness with whom the defendant was living at the time of the homicide and who was not his wife in law.   Following Moore v. State, 67 Law. Rep. Ann., 499.

**2.—Same—Illegal Marriage—Confidential Relationship.**

On a trial for murder where the supposed second wife of defendant stated on cross-examination that during the commission of the offense she believed herself the wife of the defendant, that they lived and cohabited together and that she had a child by him, and that their relations were of that confidential nature as exist between man and wife and that they were both charged with the offense. Held that her marriage with the defendant being illegal it did not matter however confidential the relationship may have been between them, or that she may have regarded him as her husband; this could not prevent the State to compel her to testify against the defendant.

**3.—Same—Bill of Exceptions—Evidence.**

Where the bill of exceptions taken to testimony in a trial for murder did not state what was said or took place in a county outside of that of the prosecution, except that something unusual occurred, the same is defective and can not be considered.

**4.—Same—Accomplice—Evidence.**

Where other evidence in a case of murder decided the issue of whether or not the State's witness was an accomplice of defendant, there was no error in admitting her testimony, that in carrying things to defendant with which he whipped deceased she had no desire or intent to have the latter injured, that she did so because she was afraid of defendant.

**5.—Same—Immaterial Testimony.**

Upon a ,trial for murder there was no error in excluding testimony to the effect that deceased, who had been cruelly whipped to death by defendant, said to the witness that her mother beat her over the head with a stick of wood or kept a quirt with a rod of iron in the end of it for the purpose of whipping deceased.

**6.—Same—Acts and Threats of Third Party.**

Upon a trial for murder where neither the bill of exceptions nor the record suggested even remotely that the mother of the deceased had anything to do with the killing, there was no error in excluding testimony that the mother of deceased long prior to the homicide had said that when she got deceased off in the country that God damn her she was going to kill her.

**7.—Same—Means Used in Perpetrating Crime—Evidence.**

Where upon a trial for murder the evidence showed that defendant chained deceased to a tree and beat her, and this chain was identified as the one introduced in evidence, there was no error.

**8.—Same—Photographs—Bill of Exceptions.**

Where upon trial for murder the bill of exceptions to the introduction of certain photographs taken of the deceased after her death did not show that the same were not correct photographs, except defendant's objections which were not certified by the court as facts that they were not true representations, there was no error.

**9.—Same—Practice—Judge—Witness.**

Where upon trial for murder the trial judge called a State's witness who had left the stand to the bench and had a conversation with him in the presence but not in the hearing of the jury, there was no error.

**10.—Same—Practice—Witness—Judge—Defendant's Counsel.**

Where upon trial for murder after defendant had introduced all his witnesses, he requested the sheriff to call as a witness a certain physician whom the court had excused until the following morning, whereupon the court directed the State to open the argument, and defendant's counsel was told that he could use this witness or any other before beginning his argument, and the witness was tendered him immediately after the State had opened his argument and before defendant's counsel had made his argument; and this same witness, who was temporarily excused on account of the desperate illness of his wife, was several times during the progress of the trial at such times when he appeared in the courthouse tendered to defendant to be used as a witness. Held no error.

**11.—Same—Acts and Conduct of Spectators—Bill of Exceptions.**

Where after trial for murder the defendant objected in his motion for new trial to the conduct of spectators during the trial, but did not show in his bill that they interfered in the trial of his case, there was no error.

**12.—Same—Argument of Counsel—Bill of Exceptions.**

Where upon appeal of a conviction for murder, there was no bill of exceptions to the argument of State's counsel to which appellant complained, the point could not be considered.

**13.—Same—Charge of Court—Motive—Carnal Intercourse.**

Where upon a trial for murder there was evidence that defendant beat, bruised and ultimately killed deceased and in the course of his beatings had carnal intercourse with her on one occasion, there was no error in the charge submitting to the jury this phase of the case and limiting the same to the motive with which defendant committed the offense of murder. Besides defendant could not complain since he did not object to this testimony.

**14.—Same—Death Penalty.**

Upon an appeal from a conviction of murder assessing the death penalty, where the record showed an unparalleled ferocity and brutality in the commission of the offense, and where the court had charged on every legitimate phase raised by the evidence the judgment will not be disturbed.

Appeal from the District Court of Williamson. Tried below before Hon. V. L. Brooks.

Appeal from a conviction of murder in the first degree; penalty, death.

The opinion states the case.

*Sanbo & Shelton* and *J. F. Taulbee,* for appellant.—If the court should hold that the testimony is sufficient to sustain a conviction, then we earnestly insist that the case should be remanded because the trial court permitted appellant's wife, Maud Nixon Young, to testify as shown by bill of exceptions No. 1. We deem it unnecessary to quote the statute on this subject, but will call the attention of the court to the case of Dumas v. State, 14 Texas Crim. App., 464;

Boyd v. State, 26 Texas Crim. App., 470; where this identical question is decided by this court.

The witness was used to prove that May Benton Young was not appellant's wife in order to qualify said May Benton Young as a witness against appellant, and thereby became at least an indirect witness against her husband. If the direct testimony of a wife cannot be used against her husband, then her indirect testimony cannot be used for the same purpose, yet the trial court allowed the wife's testimony to be used for the purpose of proving that the witness May Benton Young was not appellant's wife. There is no testimony in the record except the testimony of Maud Nixon Young, that proves or can prove that May Benton Young was not the wife of appellant who in this case was on trial for a criminal offense. Yet her testimony is used for the purpose of qualifying another to testify against her husband who is on trial. This is using the wife as a witness against her husband.

We believe that this principle is clearly laid down in the authority cited by this court, in the case of Moore v. State, 67, L. R. A., page 499, and in the authorities there cited. If the action of the trial court was error, it certainly was a fundamental error for which this case should be reversed.

*Howard Martin,* Assistant Attorney-General, for the State.—But in this connection appellant objected to the action of the court in hearing testimony on this issue, that is, as to whether May Benton was his wife, in the absence of the jury, and in requiring appellant's lawful wife to testify against him. The State's answer to these objections is, that the qualification of a witness is a question for the determination of the court, and it was proper for the jury not to hear the testimony offered upon this issue; that it may be true that the court erred in requiring his lawful wife to testify before the court upon this issue; but as the other evidence set out in the bill is amply sufficient to sustain the finding of the court that May Benton was not his wife, and as the jury did not hear his wife's testimony, no injury is shown. The presumption is that the court did not consider illegal testimony, but only considered evidence which was admitted. Crow v. State, 5 Texas Ct. Rep., 913; Lara v. State, decided Dallas Term, 1906.

The court did not err in permitting the State to introduce in evidence and exhibit to the jury a photograph of the deceased, which was made after her death, showing the mutilated condition of her body. The following authorities sustain this action of the court: Taylor v. Warner, 88 Texas, 642; Ry. Co. v. Moore, 15 S. W. Rep., 714; 18 Am. & Eng. En. Law 1, ed. 424.

BROOKS, JUDGE.—Appellant was convicted of murder in the first degree, and his punishment assessed at death. The facts in substance

show, that deceased, who was a girl 16 or 17 years of age, at the instance of her mother, or on account of mistreatment on the part of her mother, decided to live with appellant and his wife. The indictment charges that appellant did unlawfully kill deceased by beating, bruising and wounding her with a blacksnake whip and stick and a hoe, and a hoe-handle, and a rock and a plank, and a board and a rope, and by kicking her with his foot and by stamping her with his foot, and by choking her with his hands. These allegations are amply proved by the evidence; and the facts show a systematic and continued infliction of unprecedented cruelty towards a helpless girl on the part of appellant. The extent of the cruelties were such that finally there was scarcely a place on her body that did not evidence either a scar or a sore. The beating commenced in Falls and Bell Counties, and terminated at a little village called Florence in Williamson County. At Florence deceased was taken in charge by some kindly neighbors, and appellant was arrested. A short while after this deceased died from the wounds so cruelly and systematically inflicted by appellant.

Bill of exceptions number 1 shows that when May Benton Young was placed upon the stand by the State, defendant's counsel requested the court to have the jury retired, for the reason they had objections to said witness testifying which they wished and thought it proper the court should hear and determine out of the presence of the jury. During the absence of the jury said May Benton Young testified that she had been married to defendant on March 13, 1903, but that defendant subsequently told her that prior to said date he had another living wife. Thereupon witnesses Mrs. Peter Bedell, Maud Nixon Young, and Houston P. Young, testified to the marriage of appellant to Maud Nixon Young. White, the justice of the peace who married Maud Nixon Young to appellant, also testified to said facts, and in addition to this the marriage license was introduced. The objection of appellant to this testimony was because the theory of the defense is that this woman is the wife of defendant. The court thereupon stated, that he would hear the evidence as to who was the defendant's wife, and would exclude from the consideration of the jury any evidence that was not admissible. The bill of exceptions presenting this matter shows that Maud Nixon Young was never divorced from appellant at all; and therefore, in contemplation of law, May Benton Young, with whom he was living at the time of the homicide, was not in law his wife. The evidence is ample to support this proposition, outside the testimony of Maud Nixon Young, his first wife. Furthermore, all of this testimony was introduced to the court in the absence of the jury and was never introduced before the jury, and even conceding appellant's contention that Maud Nixon Young was his wife and testified to the fact of her marriage with him, because said statement would be a fact in the evidence tending to incriminate appellant, would not be well taken, since the predicate showing that

Maud Nixon Young was the wife of appellant and not May Benton Young, is doubly established by the testimony as disclosed by this bill. Therefore, we hold that the court did not err in permitting May Benton Young to testify; and we further hold that the mere fact that Maud Nixon Young testified before the court, in the absence of the jury, on the question of the first marriage, would not be reversible error, even conceding that said fact was an error. However, this question was decided against appellant's contention in Moore v. State, 67 Law Rep. Ann., 499.

Bill number 2 shows that while May Benton Young, the supposed second wife of appellant, was testifying, the following question was asked by defendant: "Up to the time you were arrested and brought down here in regard to this matter, I will ask you if you did not believe yourself to be the wife of defendant, and if the relations between yourself and the defendant were not as man and wife, and that you lived and cohabited together, and that you had a child by him, and if your relations were not of that confidential nature as exist between a man and his wife, up to the time you were both arrested charged with this offense?" To which question, the witness answered, "Yes, sir." Thereupon defendant objected to the witness testifying against defendant, because at the time of the commission of the alleged offense, the witness was the wife of defendant, living with him as his wife, and believing herself to be legally married to him; and that the confidential relations existing between herself and the defendant were such as exist between a man and wife. The court overruled said objections. Thereupon the witness testified that defendant whipped deceased with a hoe handle, a blacksnake whip, and a plank. In discussing the first bill, we held that May Benton Young was not the wife of appellant, since at that time he had a wife living, to whom he had been legally married, in Travis County. It follows that the second marriage was an illegal marriage, and however confidential the relationship may have been between appellant and May Benton Young, and however much she may have regarded him as her husband, yet this could not prevent the State proving what she knew about a crime appellant committed, as in contemplation of law she was not his wife.

Bill number 3 shows that the State asked May Benton Young, the following questions: Q. "Where did you go? A. After we left with the girl we came on from Killeen, and from there to Temple, and then to Belton, and from there to Mr. Berry's farm. Q. Now did anything unusual or out of the way take place? A. Yes, sir. Q. Where was it that it took place? A. This side of Killeen." This bill is defective, in that it does not state what was said took place. Appellant's objection is that he objected to anything occurring in Bell County, or outside of Williamson County. The witness does not testify to anything against appellant, except that something unusual occurred.

Bill number 4 shows that appellant objected to certain testimony

introduced by the State through the witness May Benton Young, on the ground that they objected to the same, unless the matters inquired about occurred in Williamson County, but the bill does not show that anything occurred. Therefore, we cannot review this matter.

By bill number 5 it is shown that May Benton Young was asked by the State, "You have said that on one or more occasions you went to the wagon and got the whip and took it to defendant, and that he whipped deceased." A. Yes sir. Q. Why did you do that? A. He told me to. Q. I will ask you to state if in anything and everything you did and took part in, in carrying things to him with which he whipped deceased, you had any desire, or intent to have her injured?" Appellant objected to anything that witness might have thought or feared from defendant, which objection was overruled. by the court. Witness answered: "No, sir; I did not want her hurt. I did it because I was afraid not to. I was afraid because he had beat and whipped me." This bill is allowed with this explanation, "that the other evidence in the case recited the issue of whether or not witness May Benton was an accomplice of the defendant." We see no legal objection to this testimony.

The eighth bill complains that the court erred in refusing to permit appellant to ask May Benton Young the following: "I will ask you whether or not Alma (deceased) told you that her mother beat her over the head with a stick of wood." To which question appellant expected the witness to answer, yes. This testimony was objected to by the State on the ground that it was inadmissible. The holding of the court was correct.

In bill number 9 appellant propounded the following question to May Benton Young: "I will ask you if old Mrs. Hinton, the mother of the dead girl, kept a quirt with a rod of iron in the end of it for the purpose of whipping that girl?" This testimony was objected to on the ground of immateriality, remoteness and a conclusion of the witness. We see no error in the court's excluding it.

Bill number 10 shows that appellant asked May Benton Young this question: "On an occasion first before the Hintons left you, I will ask you if the mother of this girl did not say that when she got her off in the country that God damn her she was going to kill her." The ground of the State's objection is not stated in the bill. But we are at a loss to know upon what theory this testimony was admissible. At best it could but constitute a threat of a mother, and there is nothing in the bill, nor the record, suggesting even remotely that her mother had anything to do with the killing.

Bill number 12 complains that the State introduced in evidence a chain mentioned in May Benton Young's testimony. Said chain was about four and one-half feet long, and weighed about five pounds. Objection to the introduction of said chain was, that it is not alleged as a means by which any of the assaults were committed. May Benton's testimony referred to by the bill, shows that appellant chained

deceased to a tree, and beat her; and this chain was identified as the chain with which he had chained her. There was no error in this.

Bill number 13 shows that appellant objected to the introduction by the State of the photographs taken of deceased after her death. The grounds of objection being that the pictures were not true representations of the girl, and were not taken until after certain operations had been performed upon her by the attending physicians. These objections are not certified by the court as facts. If the pictures were true representations, or measurably true representations of the condition of the body of deceased after death, we know of no rule of law that would exclude their admission as testimony. If they were not true or measurably true representations at least, they should not have been introduced; but in the shape the bill is presented to us, there is nothing therein showing that the same were not correct photographs, except appellant's objections. The grounds of objection are not certificates of the judge that such were facts.

Bill number 15 complains that after the witness Carroll Thomas had left the witness stand, the court called said witness to the judge's bench, where he had a conversation with said witness, in the presence but not in the hearing of the jury. We know of no law that precludes this action on the part of the court.

Bill number 16 shows that after appellant had introduced all of his witnesses, he requested the sheriff to call the witness Dr. O. B. Atkinson. Whereupon the court informed counsel that said witness had been excused until 9 o'clock the following morning, and that he would permit the State to open the argument before the return of said witness, if defendant had no further evidence to introduce. Appended to this bill is a long explanation by the court, showing, in substance, that Dr. Atkinson was summoned as a witness, but the defendant announced ready for trial with the understanding that Dr. Atkinson could not be present on account of the very serious illness of his wife. After said statement, defendant continued to announce ready for trial. However, during the trial of the case, Dr. Atkinson came into the courtroom, and was sworn as a witness at the request of both parties. He then stated to the court that his wife was very sick, having given birth to a child at 5 o'clock that morning, and requested that he be not compelled to remain at Georgetown. State's counsel thereupon indicated to the court that he did not intend to use Dr. Atkinson and if defendant desired to use him to do so at that time. This defendant declined to do, and also declined to excuse him. Thereupon the court held Dr. Atkinson at the courthouse from 9 o'clock in the morning until 3:30 o'clock in the afternoon of the same day. At this time, Dr. Atkinson showed the court by satisfactory evidence, that his wife was desperately sick, and that his presence at Florence was imperatively demanded for that reason. The court thereupon again caused the witness to be tendered to defendant at the conclusion of the testimony of the witness Carroll Thomas.

Defendant again refused to use him, and refused to state whether or not he intended to use him, and also refused to excuse him. Sometime after this, Dr. Atkinson was present in court, and he was tendered to counsel for defendant by the court, and counsel for defendant was also then told that he could not only use him, but any other witness he desired, before beginning the argument of the case. The witness was tendered appellant immediately after the State had opened the argument of the case, and before appellant's counsel had made their argument. This bill not only shows no error, but manifests a degree of obstinacy on the part of appellant's counsel.

There are various errors urged in appellant's motion for new trial. Most of them have been discussed in the above bills. Among others, appellant complains in his motion that spectators were permitted to lean on the jury box and crowd the courtroom. Appellant also complains that the spectators at the time of the verdict indulged in certain conduct not disclosed in motion nor bill. If the spectators interfered with the trial of this case, the record does not show that fact; nor has any bill indicated anything of the kind. The bare allegation in the motion is not sufficient.

Appellant also complains of the argument of the assistant district attorney. There is no bill presenting this matter. He also objects that State's counsel was permitted to discuss the rape of deceased by defendant, because he was not charged with this offense; and in not instructing the jury to disregard said argument. There is no bill presenting this matter.

Appellant in motion for new trial objects to the following portion of the court's charge: "Certain evidence has been permitted to be introduced before you, which it is claimed by the State shows that the defendant assaulted deceased, for the purpose of having or that defendant did in fact have sexual intercourse with said deceased. You are at liberty to consider said evidence for what, if anything, you consider it worth, in determining the motive with which defendant committed the offense charged in the indictment, if you find that he committed such offense at all. But you have not the right to consider said evidence for any other purpose whatsoever in determining either the question of his guilt or innocence of the offense charged, or in determining the amount or character of his punishment, if any, or for any other purpose." As we understand it, the evidence shows that appellant beat, bruised and ultimately killed deceased in the mode and manner above detailed, and in the course of his beatings had carnal intercourse with her on one occasion. It seems that the trial court permitted the introduction of this testimony (there being no bill reserved to the same) upon the theory that it furnished a motive for the killing; that deceased would not submit willingly to appellant's carnal desires, and that furnished the motive for the brutal manner in which she was beaten. As we understand it, the above charge limited said testimony to proving said motive. If it be conceded there was error

in the same, it could not have injured appellant, since there was no bill to the introduction of the testimony.

We have never had a record in this court that equaled the unparelleled ferocity and brutality manifested in this one. The jury have seen fit to give appellant the death penalty; the trial court has charged on every legitimate phase raised by the evidence. The above exception is the only objection urged to the charge. We think the evidence disclosed by this record amply warranted the verdict of the jury, and the judgment is affirmed.

*Affirmed.*

[Motion for rehearing overruled without written opinion.—Reporter.]