# J. G. MOORE v. THE STATE.

No. 16933.   Delivered November 14, 1934.
Rehearing Denied January 30, 1935.
Reported in 78 S. W. (2d) 189.

The opinion states the case.

*L. H. Welch,* of Breckenridge, for appellant.

*Ben J. Dean,* District Attorney, and *Floyd Jones,* both of Breckenridge, and *Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

CHRISTIAN, JUDGE.—The offense is murder; the punishment, confinement in the penitentiary for fifteen years.

It was charged in the indictment, in substance, that appellant, with malice aforethought, killed Charles Hoskins by shooting him with a gun.

Appellant and deceased were employed by the Humble Pipe Line Company, appellant being a "field gauger" and deceased holding the position of "telephone line man." In Chaney pump station, which was used by the Humble Company for the purpose of pumping oil, there was a testing board. By manipulating the wires on the board trouble in the telephone system could be located. Appellant was familiar with the switchboard, having been a telegraph operator. At 7:30 o'clock on the morning of December 13, 1933, appellant telephoned from Chaney station to the office of the chief dispatcher of the Humble Pipe Line Company. A few minutes later the Chaney telephone line was reported to be out of order. Also other lines of the company were found to be out of order. Deceased was sent to Chaney station to locate the trouble. According to the dying declaration of deceased, he was shot by appellant with a .22 rifle as he entered the station, he not having seen appellant until he had shot him. Further, the statement of deceased was to the effect that appellant stated to him that he had caused the line trouble in order to bring deceased to the station.

Testifying in his own behalf, appellant denied that he caused the trouble in the telephone lines, he testified that he was engaged in the performance of his usual duties at Chaney station; that when deceased entered the building he told deceased that he wanted to talk to him; that deceased said, "I want to see you and I will see you with this," and reached for his hip; that he noticed that deceased had a pair of pliers about twelve inches long; that deceased raised the pliers to hit him and that he tried to get them away from deceased; that the pliers fell out of the hands of deceased and that as deceased rushed upon him he (appellant) tripped and fell; that he secured the pliers and hit deceased on the head with them; that deceased asked him to let him up and he complied with his request; that after letting deceased up he (appellant) walked to a desk where he had a .22

rifle and picked the rifle up, facing deceased; that deceased grabbed the gun and tried to get possession of it; that the gun was discharged in the scuffle; that he did not know whether he (appellant) fired it or not; that he did not intend to fire it; that after deceased was shot he left the office; that he (appellant) had ample opportunity to shoot deceased as he was leaving but he did not want to kill him, and that he did not attempt to kill him; that the matter he wanted to talk to deceased about was deceased's attentions to his (appellant's) wife; that he had observed the actions of deceased for a number of months and had reached the conclusion that deceased was attempting to impose himself upon his wife; that he had tried to secure his transfer in order that he might move his family out of the vicinity in which deceased lived; that he had asked that deceased be transferred in order that deceased might not impose upon his family; that the matter had disturbed him and caused him mental anguish.

Appellant's wife gave testimony to the effect that at times appellant had insane delusions. She denied any effort on the part of deceased to seek her company. Several of appellant's neighbors testified to conduct on the part of appellant which led them to believe that he was at times mentally deranged. Physicians who qualified as experts on mental diseases expressed the opinion that appellant was a paranoiac and that he was insane at the time he killed deceased.

While expressing the opinion that appellant was insane while laboring under the delusion that deceased was trying to break up his (appellant's) home, the sheriff testified, upon cross-examination, that on the 13th of December, 1933, the date of the homicide, appellant appeared to be sane and he saw nothing in his acts or conduct that indicated that he was insane. One of appellant's employers testified that he talked to appellant on the day of the homicide and that he appeared to be calm and collected. He testified, further, that appellant always performed his duties well. Another employer testified that appellant had worked for the Humble Pipe Line Company for fourteen years under his supervision, and that he kept his reports in good condition; that on the day of the homicide he talked to appellant in the sheriff's office; that appellant appeared to be calm; that in view of the fact that he was placing another man in appellant's place, appellant give him all of the information he asked, and wrote down what was to be done in the field the next day by the new man; that he did not notice anything out of the ordinary at the time. Again, another employer testified that appellant's

work had been entirely satisfactory; that he had never seen anything wrong with appellant. The chief gauger, under whom appellant worked, testifed that appellant appeared to be troubled and worried at times, and had requested him to help him get a transfer from the field in order to be away from deceased. However, he testified further that appellant's work was normal in every respect.

Appellant insists that by the uncontroverted and overwhelming weight of the evidence he established that he was insane at the time of the fatal shooting, and that hence the verdict of the jury should not be permitted to stand. In support of his contention he cites Kiernan v. State, 84 Texas Crim. Rep., 500, and Gardner v. State, 85 Texas Crim. Rep., 103. In Kiernan's Case it is not shown in the opinion that the accused testified. On the contrary, it was stated that no one testified as an eye-witness to the killing. Several witnesses testified to many acts of the accused extending over a period of years showing that his mind was unsound and leading them to the conclusion that he was insane. Five reputable physicians, including a member of the Southwestern Insane Asylum staff, testified that the accused was insane, some of them testifying that on a former trial that they had testified that the accused was sane, but had changed their mind since. The only other witnesses adduced were as to facts immediately attendant upon the killing. None of these witnesses was questioned as to the accused's mental condition. The state put on no witnesses to prove the sanity of the accused, nor any witness to impeach any of the witnesses offered on the question of insanity. In view of the fact that numerous witnesses, who were apparently credible, agreed that the accused was insane and that there was absolutely no contradiction of that fact in the record, this court ordered a reversal of the judgment. In Gardner's Case the accused was a man 72 years of age. It was uncontroverted that advancing age had caused his mental decay to such an extent as to induce numerous witnesses to testify that they believed him insane. This testimony was uncontroverted by the state. The trial was for assault with intent to rape a girl under seven years of age. The assault occurred at noon on the third step from the bottom of an open stairway on the ouside of a hotel which was in full view of street cars and persons passing the building. Eye-witnesses located themselves across the alley in plain view and watched the accused with the little girl on his lap for a length of time extending from ten to twenty minutes. The conclusion was reached by this court that the circumstances under which the

offense was committed, as detailed by state's witnesses, tended strongly to corroborate the uncontroverted testimony that the accused was insane.

. In our opinion the present case is distinguishable from the cases mentioned. That there was testimony controverting the testimony of appellant's witnesses touching insanity is apparent from our statement of the evidence hereinbefore set forth. As pointed out, the sheriff testified that upon the occasion of arresting appellant on the day of the homicide he was of the opinion that appellant was sane. Appellant's employers gave testimony warranting the conclusion that for the fourteen years appellant had worked for the Humble Pipe Line Company he was of sound mind. Other witnesses had not noticed anything in appellant's appearance or conduct that led them to think that he was mentally deranged. Appellant testified as a witness in his own behalf. He made a connected and intelligible statement of the transaction resulting in the homicide. It is well settled that the demeanor and appearance of the accused during the trial may be proven to indicate his sanity or unsanity. Branch's Annotated Penal Code, Sec. 30; Burt v. State, 38 Texas Crim. Rep., 397. The jury were warranted in considering appellant's demeanor on the witness stand, his ability to remember and relate the circumstances touching the homicide, and his intelligence as a witness in determining whether he was insane. Manifestly, on the question of insanity there was an issue for the jury. The opinion is expressed that there was sufficient evidence to support the conclusion that appellant was sane when he shot deceased.

Bill of exception No. 1 relates to the refusal of the court to grant appellant's first application for a continuance. Touching the facts appellant expected to prove by the absent witness, the application reads as follows: "That the facts which this defendant expects to prove by said witness are with reference to the acts and conduct of the deceased, Charles Hoskins, and that said witness made report of such facts to this defendant; that said witness on different occasions reported to the defendant as to the acts and conduct of the deceased, Charles Hoskins, in the vicinity about the home of the defendant during the day and while the defendant was absent in the discharge of his duties." The quoted allegations constitute mere conclusions and general averments. An application for a continuance is defective when it fails to set out what the accused expects to prove by the absent witness, and the facts must be specifically set out in order that the trial court may be able to determine their materiality.

Mere conclusions and general averments are not sufficient. Branch's Ann. Penal code, sec. 312; Perkins v. State, 46 S. W. (2d) 672. The application is defective in failing to show the materiality of the absent testimony. Perkins v. State, supra, and authorities cited. We are constrained to hold the bill of exception fails to reflect error.

It is recited in bill of exception No. 3 that F. B. Witt, a witness for the State, testified that appellant made a report to the Humble Pipe Line Company at its Cisco office by telephone about 7:30 a. m., and that about 7:31 a. m. the operator reported the Chaney line from Breckenridge to be in trouble; that at 7:40 a. m. the witness talked to deceased and the line was reported in trouble; that also the line to Ranger was reported to be in trouble. It is further recited in the bill that the witness testified in effect that it was deceased's duty to correct troubles in the telephone system; that deceased called the witness at the Cisco office over the telephone to get the location of the trouble. Further it is stated in the bill that Witt testified that he found that another line was out of order, and instructed deceased to go to Chaney station to check up on the trouble; that the lines cleared about 8:05 o'clock on the morning of the alleged homicide. Upon cross-examination it developed that the witness did not know that appellant made a report on the morning in question, as someone else had received the report. It is recited in the bill that appellant requested the court to withdraw all of the testimony of the witness from the jury on the ground that it was hearsay, not the best evidence, and speculative. It was shown by the testimony of State's witness McElroy and also by appellant's testimony, without objection, that appellant did make a report at the time in question to the Cisco office of the Humble Company. The testimony of Witt to the effect that it was deceased's duty to correct trouble in the lines was not hearsay and was clearly admissible. Appellant made a blanket objection to all of the testimony, some of which was admissible. Under the circumstances, the bill of exception is insufficient.

If the statement of facts should be consulted, we think no reversible error is shown by the bill. As pointed out, appellant made a report on the morning in question from the Chaney station to the Cisco office. The witness Witt testified that the lines were out of order shortly thereafter. If his testimony touching the Chaney line being out of order was based upon hearsay, it is apparent from his testimony that he knew as a fact, independent of what someone else had told him, that other lines of the system were out of order, and that they cleared up

at about 8 a. m. Appellant, in effect, admitted, while testifying as a witness, that the lines were out of order. On page 120 of the statement of facts it is shown that appellant testified: "No I did not fix that trouble in the switchboard so that at 7:30 the line went out at Cisco and I did not know that Hoskins would be sent to fix it * * *." If we understand the record, proof that the lines were out of order did not rest upon hearsay testimony. As to the testimony to the effect that Witt sent deceased to Chaney station to repair the lines, it is observed that the proof showed that it was deceased's duty to go to Chaney station in case of trouble in the telephone system. Appellant know that deceased's duties brought him to the place mentioned. In his dying declaration, deceased stated that appellant told him at the time he shot him that he (appellant) had brought about the telephone trouble in order that deceased might be sent to Chaney station. In short, the record contains testimony, the fair purport and effect of which was to visit appellant with knowledge that deceased would be sent to Chaney station to repair the line trouble. In dealing with a similar situation in Hunter v. State, 129 S. W., 125, this court, speaking through Judge Ramsey, used language as follows: "If we look to the evidence, the facts are such as to raise the issue and the statement of facts contains strong testimony, the fair purport and effect of which is to visit appellant with notice of this change of habit and with the fact that the children of deceased for some time had been going with him wherever he went. It will not be questioned that if this had been proven by the direct testimony of some witness, bringing home direct knowledge thereof to appellant, this would render the testimony admissible, although the fact may have been denied by him; nor is it seen why the same matter could not as well have been proven by circumstances pertinently showing the fact. There was no charge requesting that the evidence be disregarded in the event the jury should believe and find from the evidence that the fact in question was not known to appellant."

Bill of exception No. 8 deals with appellant's objection to the introduction in evidence of the dying declaration of deceased. It appears from the bill that the district attorney asked the witness Dr. Ray if deceased realized death was approaching at the time he made the dying declaration. The witness replied: "I suppose he did; I told him so." This statement was objected to as being an insufficient predicate for the introduction of the declaration. It is observed that it is not certified in the bill that it contained all the predicate laid upon which the declaration

was admitted. This certificate was essential. Downing v. State, 20 S. W. (2d) 202. If the statement of facts be consulted it is found that the sheriff testified without objection that he was present when the declarations were made and that deceased was conscious of approaching death. Dr. Ray testified that prior to making the statement he had told deceased that he had no chance to live. He further testified that deceased was sane, that the statement was voluntarily made, and that nobody prompted him. The predicate appears to be sufficient. It is not essential that the declarant shall state in specific terms that he is conscious of impending death. It is enough if it satisfactorily appears, in any mode, that the declarations were under that sanction, whether it be proved by the express language of the declarant, or be inferred from his evident danger, or the opinion of the medical or other attendants stated to him, or from his conduct or other circumstances of the case, all of which are resorted to in order to ascertain the state of the declarant's mind. Downing v. State, 20 S. W. (2d) 202.

Bill of exception No. 11 presents the following occurrence: The sheriff of Stephens County, who was a witness for appellant, upon being cross-examined by the district attorney, was asked if he had heard that appellant had threatened to kill his wife and family. Over appellant's proper objection he testified as follows: "I had heard that defendant threatened to kill his wife and his family. My hearing that he had threatened to kill his wife and family was information; it was not rumor." On his direct-examination by appellant, the sheriff had testified that appellant's general reputation as a peaceable and law-abiding citizen was good. It is the rule that a witness to the good character of the accused may be asked, upon cross-examination, whether he had heard rumors of particular charges or acts of the accused inconsistent with the character the witness is called to prove, not to establish the truth of such charges, but to test the sincerity of the witness and enable the jury to weigh his evidence. Townsley v. State, 103 Texas Crim. Rep., 508, 281 S. W., 1054.

One of the dying declarations made by deceased was to the effect that he had at no time harmed appellant or any member of his family. While this statement was inadmissible, we fined that appellant's wife, on his behalf, testified, without objection, as follows: "No, Mr. Hoskins (deceased) never in any way bothered or offended me or any of the family." We deem it unnecessary to further discuss the grounds shown in bill of exception No. 10 in which appellant objected to the reception in evi-

dence of said statement. Under the circumstances, the bill fails to reflect reversible error. Wilson v. State, 72 S. W. (2d) 255.

We have not undertaken to discuss all of the bills of exception found in the record. A number of these bills relate to the argument of the district attorney. A careful examination of all of appellant's contentions leads us to the conclusion that reversible error is not presented.

The judgment is affirmed.

*Affirmed.*

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.

### ON MOTION FOR REHEARING.

LATTIMORE, JUDGE.—Appellant first insists that we erred generally in affirming this case, because the conclusion of guilt is directly in conflict with the testimony of all the physicians and other witnesses testifying,—all of whom appellant says testified to his insanity. We have gone carefully over the record, and we regret that we can not agree with appellant's contention. In substance he contends that he was a paranoiac, that his brain disorder was such that while he could attend to all his duties, and in all other matters and particulars act as a sane man would be expected to,—that he was mentally unsound in that he believed deceased was trying to impose his attentions upon the wife of appellant, and that because while in this unbalanced condition of his mind, he shot and killed deceased he should have been acquitted.

It appears in the testimony that a great many witnesses testified, some of whom were physicians, and upon the history of appellant's case given them these gentlemen testified that in their opinion he was a paranoiac. Others who were non-experts and who knew appellant and associated with him testified that in their opinion there was something wrong with him, and that he acted and talked in such way as to convince them that he believed deceased was trying to impose his attentions upon the wife of appellant. Several of these witnesses expressed their belief that appellant was of unsound mind. A number of other witnesses who associated with appellant gave testimony to the contrary. Conflicts in testimony are for settlement by the jury, and this observation seems to us particularly applicable in a case like the one before us. One witness observing appellant's conduct and demeanor in regard to the matters referred to,

would conclude that appellant was very jealous of his wife, and that he, appellant, believed and so demonstrated by his acts, that he had cause to watch deceased and to believe he was paying attention to appellant's wife. The wife denied any improper advances on the part of deceased. A number of witnesses testified that they had associated with appellant in the ordinary walks of life and had observed nothing wrong with him, or that indicated he was insane.

It is in evidence that after shooting deceased with a rifle while the latter was pursuing his ordinary work, appellant commanded deceased to say he was hijacked and shot, and that appellant took the gun with which he shot deceased and left it at a place where, according to the State's theory, it was hidden. It is also true that at the time of this trial appellant appeared to be well and normal, and that he testified at length, and as intelligently as any witness could,—making out a complete case of self-defense, a thing which would probably appeal to a jury as the action of a sane man. The dying declaration of the deceased, which was in evidence,—wholly contradicted the testimony of appellant as to what occurred at the time and place of the shooting. We would not feel ourselves justified in disturbing the verdict of the jury upon the ground that the evidence did not support same.

Appellant complains in his motion of our disposition of his bill of exception No. 1. In addition to what we said in our former opinion regarding the refusal of the court to grant a continuance applied for, we further observe that no subpoena was attached to said application from which the trial court could be informed as to the diligence used by appellant to secure the absent witness, nor was any affidavit of said witness attached to the motion for new trial. The averments of the application were very general and indefinite.

Appellant also complains again of our disposition of his bill of exceptions No. 6. We have reviewed the matter. We do not think the testimony of Mr. Martin, complained of in said bill, at all inadmissible. The fact that appellant denied that he was the person claimed by Martin to have been seen on the morning of the homicide near the scene, would not make Martin's testimony incompetent.

We have again reviewed appellant's complaint of the reception in evidence of the dying declaration made by deceased, part of which was reduced to writing and signed by deceased, and the remainder of which purports to be a statement made by deceased just before he died. It is not necessary that a dying

declaration be reduced to writing. There is no question from the record before us but that deceased knew he was about to die. Appellant's complaint of the fact that the district attorney questioned deceased, in answer to which questions part or all of the dying declaration was made, is of no avail. In Sec. 1866 of Mr. Branch's Ann. P. C. he cites many cases holding that it is not a sufficient objection to the admission of a dying declaration that same was made in answer to questions. The showing should go further and show that the questions were leading or suggestive. See White v. State, 30 Texas App., 655, and Grubb v. State, 43 Texas Crim. Rep., 75.

We again repeat that Sheriff Morrow having testified for the defendant that his general reputation was good, it was permissible for the State on cross-examination to ask him if he had not heard that appellant had threatened his wife.

The bills of exception complaining of the argument of the district attorney are each qualified by the court below, and examination of same lead us to believe, in the light of such qualification, that no error is presented in any of the bills of exception thus complaining.

We are appreciative of the argument appended by appellant to his motion, and confess that same is appealing, but the case seems to have been fairly tried, and we are unable to convince ourselves that the jury were not justified in their conclusion that appellant was not in such mental condition as that he did not know right from wrong in killing deceased; and also believe that none of the errors presented by bills of exception are such as call for a reversal.

The motion for rehearing will be overruled.

*Overruled.*

for the offense of robbery, and his punishment was assessed at confinement in the State penitentiary for a term of five years.