Jose Estrada MEDRANO, Appellant,

v.

The STATE of Texas, Appellee.

No. 08-84-00340-CR.

Court of Appeals of Texas,
El Paso.

Dec. 11, 1985.

Charles Mallin, El Paso, for appellant.

Steve Simmons, Dist. Atty., El Paso, for appellee.

Before WARD, OSBORN and SCHULTE, JJ.

## OPINION

WARD, Justice.

This is an appeal from a conviction of murder. The jury assessed punishment at ninety-nine years confinement in the Texas Department of Corrections. We reverse and remand.

The sufficiency of the evidence is not challenged and the facts will be referred to only with the discussion of the grounds of error. Appellant's first ground of error complains of the action of the trial court in overruling his motion to quash the indictment, in that the indictment failed to allege the instrument used to stab the deceased and that Appellant was not given notice of the particular offense with which he was charged. The relevant part of the indictment in this cause stated that the defendant "did then and there unlawfully, intentionally and knowingly cause the death of an individual, NICHOLAS MOTA by stabbing the said NICHOLAS MOTA with a sharp instrument, ...." As to this portion of the indictment the Appellant, prior to trial, filed a motion to quash the indictment complaining that the indictment failed to allege in plain, intelligent language the instrument alleged to have been used to stab Nicholas Mota and therefore failed to inform the defendant of the nature of the accusation against him. The motion to quash was overruled by the trial court.

The traditional rule was that a murder indictment was required to charge the means employed in the commission of the offense and that an indictment which charged that the accused killed the deceased with a sharp instrument without charging the kind or character of the instrument used was insufficient. If the means used to commit the offense was unknown, then that must be stated in the indictment and it must be then alleged that the nature of the instrument was to the grand jury unknown. *Gentry v. State,* 172 Tex.Cr.R. 345, 356 S.W.2d 793 (1962). The extreme was reached, of course, in *Northern v. State,* 150 Tex.Cr.R. 511, 203 S.W.2d 206 (1947) where the kicking and stomping indictment was held fatally defective as it

omitted the allegation that the act was by the defendant's feet.

■ A fair reading of *Vaughn v. State*, 607 S.W.2d 914 (Tex.Crim.App.1980), which "overruled" the *Northern* case, compels one to believe that the manner and means requirement will no longer be stretched to the point that it previously reached. The indictment before us sets forth the manner of death as stabbing and the means used as being a sharp instrument. We hold that a sharp instrument is sufficient and that the further allegation that the sharp instrument was unknown to the grand jury was unnecessary.

Our opinion is strengthened by *Bowen v. State*, 640 S.W.2d 929 (Tex.Crim.App.1982). There, the court was discussing an allegation in a murder indictment that the accused beat the victim with his hands and fists and if that allegation constituted an allegation of an act clearly dangerous to human life under Tex.Penal Code Ann. sec. 19.02(a)(2). There the court stated: "[i]t is sufficient simply to allege the elements of the offense without specifying the manner and means used to commit the murder." What is required then is contained in Article 21.11, Tex.Code Crim.Pro.Ann.

An indictment shall be deemed sufficient which charges the commission of the offense in ordinary and concise language in such a manner as to enable a person of common understanding to know what is meant, and with that degree of certainty that will give the defendant notice of the particular offense with which he is charged, and enable the court, on conviction, to pronounce the proper judgment; ...."

Appellant's Ground of Error No. One is overruled.

In Appellant's second ground of error, he asserts that a statement made by the deceased was inadmissible as hearsay and did not fall under the dying declaration exception. Article 38.20 of the Texas Code of Criminal Procedure states four preconditions which the State must prove before a hearsay statement will be admissible as a dying declaration. The Appellant challenges only one of these conditions which states:

That at the time of making such a declaration he was conscious of approaching death, and believed that there was no hope of recovery.

The hearsay statement was entered into evidence through Officer Menchaca of the El Paso Police Department. He testified that the deceased was conscious, excited, and "in a lot of pain". He further testified that the victim insisted on seeing his wife and children, and that a priest gave the deceased his last rites. Dr. Sippo, the attending physician, stated that at 1:50 a.m. on June 10, 1984, when the deceased was admitted to the hospital, he was covered with mud and blood and was in a serious condition. Although at that time Dr. Sippo believed the deceased would survive, he died the next day at 11:30 p.m.

■ It is not essential that the declarant state in specific terms that he is conscious of impending death. *Moore v. State*, 127 Tex.Cr.R. 637, 78 S.W.2d 189, 193 (1935). One circumstance which is very relevant is the apparent character of the wound. 1A Ray, Texas Law of Evidence, sec. 976 (Texas Practice 1980); *Samaniego v. State*, 633 S.W.2d 915, 916 (Tex.App.—El Paso 1982, no pet.). In the case at bar, the stab wounds of the deceased were very extensive; his eyes, chest, stomach and back all had serious wounds and there were fifteen to twenty wounds on his arms and hands. In addition there were major wounds to the neck, at least one of which entered into the trachea. This, coupled with the facts that he was in great pain, asked for his wife and children and received last rites, indicates that the deceased was in fear of impending death. Appellant's Ground of Error No. Two is overruled.

In Appellant's Grounds of Error Nos. Three and Four, he claims that it was improper for the State to call Christina Cadena to the stand, and that it was improper for the trial court to allow her to testify because she was Appellant's legal wife and incompetent to testify under Article 38.11,

Tex.Code Crim.Pro.Ann. Article 38.11 reads in part:

> The husband and wife may, in all criminal actions be witnesses for each other, but except as hereinafter provided, they shall in no case testify against each other in a criminal prosecution.

■ The State maintains that it would be against public policy to allow the Appellant to utilize Article 38.11 since Appellant married Christina Cadena, the principal witness to the murder, five days in advance of the trial. The State contends that it was the Appellant's intent to marry the principal witness to preclude her from testifying. It is a settled rule that the intent for the marriage or time of the marriage is irrelevant. So long as the accused is married to the witness at the time of trial she is incompetent to testify. *Cole v. State*, 92 Tex.Cr.R. 368, 243 S.W. 1100 (1922); *Moore v. State*, 45 Tex.Cr.R. 234, 75 S.W. 497 (1903); *Miller v. State*, 37 Tex.Cr.R. 575, 40 S.W. 313 (1897).

The State further contends that Appellant cannot utilize Article 38.11 because he was married to Carmen Ramirez Medrano. If Appellant was already legally married at the time of his marriage to Christina Cadena, then the second marriage was void and Christina Cadena was competent to testify. *Johnson v. State*, 122 Tex.Cr.R. 224, 54 S.W.2d 140 (1932); *Young v. State*, 49 Tex. Cr.R. 207, 92 S.W. 841 (1906).

It is clear that the State proved that the Appellant was married to Carmen Ramirez Medrano. Carmen Ramirez's brother testified that his sister and Appellant were married. He stated that he recognized a marriage license as belonging to his sister and Appellant. This marriage license was in the name of Julian Ramirez and Carmen Ramirez and showed that they were married on June 17, 1983. The brother also testified that his sister and the Appellant had two children and that he had their custody at the time of trial. Martina Mota, a friend of the Appellant and Carmen Ramirez Medrano, testified that she accompanied the Appellant and Carmen Ramirez Medrano when they were married. She further testified that the Appellant told her that he was married to Carmen Ramirez Medrano. Since the marriage license in question was in the name of Julian Ramirez and Carmen Ramirez, the State called Allan Keown, a handwriting expert, who testified that the signature on the marriage license, standing in the name of Julian Ramirez, was signed by the Appellant. The State then called Rebecca Mesa, the El Paso County Deputy District Clerk, who testified that no record existed of either Julian Ramirez or Carmen Ramirez having obtained a divorce since the beginning of 1983 in El Paso County.

No evidence was offered by the State that any divorce had been obtained during the period in question by either Jose Estrada Medrano or by Carmen Ramirez Medrano. No evidence was offered that any annulment had been obtained during the period in question by either Jose Estrada Medrano or Carmen Ramirez Medrano or by Julian Ramirez or by Carmen Ramirez. At the trial, which occurred in September, 1984, testimony was offered by Carmen's brother that Carmen was last seen by him in March, 1984. The witness Christina Cadena testified outside the presence of the jury that she married the Appellant on August 31, 1984, before District Judge Enrique H. Pena. In that ceremony the Appellant used the name Joseph H. Medrano and that marriage certificate was in evidence.

The trial court then ruled that Christina Cadena could testify and after that she was granted immunity. She then testified that the Appellant drove the deceased to the scene where later the deceased was found by the police in the seriously injured condition; that at the scene the Appellant beat the deceased and chased him out into the dark where she heard noises; that the Appellant returned to the vehicle and the witness and the Appellant left the scene together with the Appellant stating that he had left the deceased "with his tongue hanging out and his eyes popping out."

State policy is expressed in Section 2.01, Tex.Fam.Code Ann. (Vernon 1975) and that section provides the following:

When two or more marriages of a person to different spouses are alleged, the most recent marriage is presumed to be valid as against each marriage that precedes it until one who asserts the validity of a prior marriage proves its validity.

■ This statutory presumption that the most recent marriage is a valid one continues until one proves the impediment of a prior marriage and its continuing validity. *Estate of Claveria v. Claveria*, 615 S.W.2d 164 (Tex.1981). This presumption requires the proponent of the earlier marriage to prove that the earlier marriage has not been dissolved. Here, the State attacked the validity of the second marriage and it had the burden to introduce sufficient evidence which standing alone negated the dissolution of the prior marriage. *Wood v. Paulus*, 524 S.W.2d 749 (Tex.Civ.App.— Corpus Christi 1975, writ ref'd n.r.e.). To rebut the presumption it was incumbent upon the State to prove (1) that the first spouse was alive at the time the husband married the second wife, (2) that the husband never secured a divorce or annulment from the first wife, and (3) that the first wife never secured a divorce or annulment from the husband.

■ It is now established that in order to rebut the presumption it is not necessary to prove the non-existence of the divorce or annulment in every jurisdiction where such proceeding could have been possible, but only where the parties might reasonably have been expected to have pursued them. *Davis v. Davis*, 521 S.W.2d 603 (Tex.1975).

■ We apply the reasoning of those civil cases in this criminal setting. Under the evidence, the State correctly used only the records of El Paso County. Beyond that there exists a fatal defect. There was no proof at all as to an annulment and in this case there was no proof as to divorce under the parties' names of "Medrano." The only search made was as to the assumed name used by the parties on their marriage license. There was as much like-lihood that they would use their real names in a divorce or annulment as any assumed name. The State has failed to meet its burden.

In bigamy cases the Court of Criminal Appeals has stated that the burden is upon the State to show that the defendant's prior marriage has not been dissolved by death or divorce. *Clinnard v. State*, 149 Tex.Cr.R. 152, 192 S.W.2d 282 (1945); *Parker v. State*, 122 Tex.Cr.R. 21, 53 S.W.2d 473 (1932). We sustain the Appellant's Grounds of Error Nos. Three and Four.

Appellant's Ground of Error No. Five alleges error on the part of the trial court in submitting to the jury, at the punishment stage, a special interrogatory as to whether or not the Appellant used a deadly weapon during the commission of the offense of which he was found guilty. Appellant argues much of the same that he presented under his Ground of Error No. One, and for the reasons previously stated Ground of Error No. Five is overruled.

By Ground of Error No. Six, he again complains of the submission to the jury, at the punishment stage of the trial, of a special interrogatory regarding the affirmative finding on the use of a deadly weapon and claims a double jeopardy violation by the failure of not submitting the issue at the guilt or innocence stage. We note that the jury here passed on guilt and likewise on punishment. Ground of Error No. Six is overruled. *Polk v. State*, 693 S.W.2d 391, 394 (Tex.Crim.App.1985).

■ In Appellant's Ground of Error No. Seven, claim is made that it was error for the trial court to allow the State to enter photographs of the deceased into evidence merely to show that a deadly weapon was used. He claims that the issue of deadly weapon never should have been submitted to the jury. This ground of error relies on Grounds of Error Nos. One and Six, which have already been discussed. Since we hold that it was proper to submit the issue of deadly weapon to the jury, this ground of error is overruled.

By Appellant's Ground of Error No. Eight, error is asserted that the court should have given a limiting instruction to the jury that they should only consider the photographs for determining the issue of deadly weapon. It is clear that the pictures would have been admissible at the guilt or innocence stage of the trial. *Williams v. State*, 535 S.W.2d 637 (Tex.Crim.App.1976); *Taylor v. State*, 420 S.W.2d 601 (Tex.Crim.App.1967). The Appellant also claims that the probative value of the photographs was not outweighed by their inflammatory aspect. The photographs were competent, material and relevant to the issue at trial. *Lopez v. State*, 630 S.W.2d 936 (Tex.Crim.App.1982); *Kelly v. State*, 621 S.W.2d 176 (Tex.Crim.App.1981; *Burks v. State*, 583 S.W.2d 389 (Tex.Crim.App.1979); *Martin v. State*, 475 S.W.2d 265 (Tex.Crim.App.1972). Appellant's last ground of error is overruled.

The judgment of the trial court is reversed and the cause is remanded for new trial.